Norman E. MORRISEY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 5, 1993.
Decided: Feb. 2, 1993.

Raymond M. Radulski, Asst. Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Wilmington, for appellee.

Before VEASEY, C.J., and MOORE and HOLLAND, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Norman E. Morrisey ("Morrisey") was found guilty of the following offenses: twelve counts of Unlawful Sexual Intercourse in the First Degree; three counts of Robbery in the First Degree; one count of Theft; two counts of Unlawful Imprisonment in the Second Degree, the lesser-included offense of Kidnapping in the First Degree; and one count of Unlawful Sexual Penetration in the First Degree. Morrisey was sentenced on April 10, 1992.[1] This is Morrisey's direct appeal.

Morrisey has raised several challenges to the propriety of his convictions. First, according to Morrisey, the Superior Court committed reversible error by permitting the State to predicate his criminal liability for Unlawful Sexual Intercourse in the First Degree upon the conduct of an innocent intermediary. 11 *Del.C.* § 271(1). Morrisey contends that the innocent persons, who he forced to act, did not commit Unlawful Sexual Intercourse in the First Degree. Second, Morrisey contends that the Superior Court committed reversible error by refusing to merge the multiple counts in the indictment that resulted from each act of sexual intercourse that Morrisey was charged with causing, in violation of statutory and constitutional provisions proscribing multiple convictions and sentencing for discrete offenses. Third, Morrisey argues that the Superior Court committed reversible error by refusing to grant his motion for a judgment of acquittal on Count XVIII of the indictment, charging Morrisey with Robbery in the First Degree with regard to the theft of certain car keys, because there was insufficient evidence to sustain that conviction. Finally, Morrisey argues that the Superior Court committed reversible error by failing to excuse a juror, who indicated that she knew a prosecution rebuttal witness.

We have concluded that each of the Superior Court's rulings was correct. Therefore, all of Morrisey's challenges are without merit. Accordingly, the Superior Court's judgments of conviction are affirmed.

*Facts*

In the early morning hours of May 29, 1991, William Clark and Donna Clough[2] were walking on South Market Street in

---

**1.** Morrisey's sentences were as follows: twelve terms of fifteen years mandatory imprisonment on each count of Unlawful Sexual Intercourse in the First Degree (i.e., 180 years total); three terms of two years mandatory imprisonment on each count of Robbery in the First Degree; five years at Level V suspended after six months for four and one-half years at Level IV suspended after six months for four years at Level III, suspended after one year for three years at Level II on the charge of Unlawful Sexual Pen-

etration First Degree; two terms of one year for each count of Unlawful Imprisonment in the Second Degree, suspended for one year probation; and one year Level V, suspended for one year probation on the count of misdemeanor theft.

**2.** The names of these two individuals are pseudonyms. Supr.Ct.R. 7(c).

Wilmington. They were accosted by a man who was armed with what appeared to be a handgun. The man told them to raise their hands and walk to an isolated area nearby. Clark, thinking that the man was a robber, took some money from his pocket and threw it on the ground.

The man picked up the money but directed Clark and Clough to keep walking. Once isolated, the man ordered Clark and Clough to disrobe. Over the course of the next hour or two, the man forced Clark and Clough, at gunpoint, to engage in several sexual acts with each other. Those acts included penile/vaginal intercourse, fellatio, and cunnilingus.

As dawn approached, the man ordered Clough to throw her ring and necklace to him. She complied. The man then ran away. Clark and Clough immediately reported the incident to the Delaware State Police. Clark told the police that he had seen the assailant before in the area of Sixth and West Streets in Wilmington. The police searched the location where the incident had occurred and found Clough's ring.

Approximately two weeks later, in the early morning hours of June 17, 1991, Kevin Dugan and Amanda Parkins[3] were at Brandywine Park in Wilmington. They were accosted by a man carrying a flashlight and armed with what appeared to be a handgun. The man ordered them to walk to an isolated area of the park.

Once isolated, he told Dugan and Parkins to undress. Over the course of the next two or three hours, the man forced Dugan and Parkins to engage in various sexual acts with each other. Those acts included penile/vaginal intercourse, fellatio and cunnilingus.

Toward dawn, the man told Dugan and Parkins to give him their respective car keys. Dugan and Parkins each took the keys from the pockets of their clothes and threw them toward the man. The man told Dugan and Parkins that he robbed people for a living. He advised them that he had learned many people left valuables in their

cars. The man then left in the direction of their cars.

Dugan subsequently discovered that his locked car had been entered with the use of his keys. His wallet, some money, a red hip sack and a pair of shoes had been stolen. Parkins' car had not been entered. Her keys were later found on the ground in the general area where she had thrown them.

Dugan and Parkins contacted the Wilmington police and reported the incident. Detective Steven Elliott ("Detective Elliott"), was assigned to investigate the matter. Detective Elliott learned that Raymond Evans ("Evans") had been observed by police officers in Brandywine Park under somewhat suspicious circumstances the night before the incident. Evans' physical appearance was similar to the description of the assailant that had been given to the police by the victims of the Brandywine Park incident.

Detective Elliott spoke with Evans at the police station. As a result of that interview, Evans was eliminated as a suspect. However, when Detective Elliott asked Evans if he had any information which might be helpful, Evans mentioned that a man he knew only as Norman frequented Brandywine Park. Evans informed Detective Elliott that Norman lived in an apartment on Sixth Street in Wilmington.

Detective Elliott learned that the apartment described by Evans was inhabited by Norman Morrisey. Detective Elliott contacted Morrisey. Detective Elliott asked Morrisey to come to the police station to be interviewed.

At the police station, after advising Morrisey of his *Miranda* rights, Detective Elliott questioned Morrisey about the two incidents. Detective Elliott then asked Morrisey for permission to search his apartment. Morrisey consented, executed an "authorization to search" form, and accompanied the police to his apartment.

On the way to his apartment, Morrisey told the police that he owned a flashlight and a toy gun. At the apartment, Morrisey

---

**3.** The names of these two individuals are also pseudonyms. Supr.Ct.R. 7(c).

went into his bedroom closet. Morrisey retrieved a small flashlight and a starter pistol from the closet, which he gave to the police.

During their search of Morrisey's apartment, the police found a number of items that had been taken from Dugan's car. Those items included a pair of shoes, a wallet with various cards bearing Dugan's name, and a red hip sack. When Morrisey observed the police discover those items, he stated that he had a sexual problem and needed help.

Morrisey was arrested immediately, while still at his apartment. He was taken back to the police station. There, Morrisey admitted his role in the Brandywine Park incident with Dugan and Parkins.

The Delaware State Police, who were investigating the South Market Street incident involving Clark and Clough, were informed of Morrisey's arrest. They prepared a photographic line-up containing a picture of Morrisey. That line-up was displayed to Clark, who had told the police that he had seen his assailant before on Sixth Street in Wilmington. Clark picked Morrisey's picture out of the line-up.

The Delaware State Police questioned Morrisey about the South Market Street incident. Morrisey denied any involvement. Clark identified Morrisey at trial as his assailant. Morrisey did not testify at trial.

### Innocent Intermediary Defendant Criminally Culpable

Morrisey was charged and convicted of twelve counts of Unlawful Sexual Intercourse in the First Degree. 11 *Del.C.* § 775. As factors in aggravation, elevating the offenses to Unlawful Sexual Intercourse in the First Degree, the indictment alleged that, during the commission of the offenses, Morrisey was armed with what appeared to be a deadly weapon and that Morrisey was not the voluntary social companion of the victims. *See* 11 *Del.C.* §§ 775(2) and 775(3). Morrisey's liability was predicated upon the innocent intermediary provisions of 11 *Del.C.* § 271(1):

A person is guilty of an offense committed by another person when:
> (1) Acting with the state of mind that is sufficient for commission of the offense, he causes an innocent or irresponsible person to engage in conduct constituting the offense....

In the Superior Court, Morrisey challenged the applicability of Section 271(1) to the crime of Unlawful Sexual Intercourse in the First Degree by filing a motion to dismiss and, thereafter, a motion for a judgment of acquittal on those twelve counts in the indictment. Morrisey's motions focused upon the two aggravating factors alleged in the indictment: (1) that Morrisey was armed with what appeared to be a deadly weapon and (2) that Morrisey was not the victims' voluntary social companion on the occasion of the crime. Morrisey argued that the State was required to establish the existence of these aggravating factors with respect to the persons who actually engaged in the acts of sexual intercourse. Thus, according to Morrisey, since the undisputed record reflected that the innocent persons, who he forced to engage in sexual intercourse, were voluntary social companions at the time and unarmed, the State failed to prove the two aggravating factors which were required elements of the crime of Unlawful Sexual Intercourse in the First Degree.

The Superior Court denied both of Morrisey's motions. Each time the Superior Court ruled that Section 271(1) could be applied to establish the elements of the crime of Unlawful Sexual Intercourse in the First Degree with regard to Morrisey's conduct. Morrisey challenges that holding in this appeal for the same reasons that he presented to the Superior Court.

■ Delaware's statutory accomplice liability law has abandoned the common law distinctions between principals and accessories. *See Del.Crim.Code With Commentary*, 48 (1973). Section 271, generally, "makes a person guilty of an offense committed by another person if an appropriate degree of complicity in the offense can be proved." *Id.* Moreover, the commentary to Section 271 specifically provides that

"[s]ubsection (1) is concerned with the case of an innocent or irresponsible agent whom the defendant causes to engage in criminal activity." *Id.*

■ Section 271(1) is substantially the same as Section 2.06(2)(a) of the Model Penal Code. MODEL PENAL CODE § 2.06 commentary at 303 n. 15 (Proposed Official Draft 1962). According to that commentary, "the section proposes to determine liability by the culpability and state of mind of the defendant, coupled with his own overt conduct and the conduct in which he has caused another to engage." MODEL PENAL CODE § 2.06 commentary at 303. Consequently, in this case, although the innocent persons who Morrisey forced to engage in sexual intercourse were unarmed, the aggravating element of displaying what appeared to be a deadly weapon was provided by Morrisey's own conduct.

■ Similarly, the fact that the innocent persons, who Morrisey forced to engage in sexual intercourse, were the voluntary social companions of each other does not negate Morrisey's culpability. 11 *Del.C.* § 272(1) specifically precludes such a defense. That section provides:

> In any prosecution for an offense in which the criminal liability of the accused is based upon the conduct of another person pursuant to section 271 of this title, it is no defense that:
>
>> (1) The other person is not guilty of the offense in question because of irresponsibility or other legal incapacity or exemption, . . . .

Therefore, pursuant to the provisions of Section 272(1), although the innocent persons could not be guilty of Unlawful Sexual Intercourse in the First Degree, because they were each others voluntary social companions, that "exemption" from criminal liability was unavailable as a defense to Morrisey.

■ Section 271(1) and its counterpart in the Model Penal Code reflect what "has been the law" for a substantial period of time prior to those codifications. MODEL PENAL CODE § 2.06 commentary at 303. It is well-established at common law that an individual is criminally culpable for causing an intermediary to commit a criminal act even though the intermediary has no criminal intent and is innocent of the substantive crime. *State v. Thomas*, Tenn. Supr., 619 S.W.2d 513, 514 (1981). *See also United States v. Cook*, 745 F.2d 1311, 1315 (10th Cir.1984). "This doctrine is an outgrowth of common law principles of criminal responsibility dating at least as far back as *Regina v. Saunders*, 2 Plowd. 473 (1575); and of principles of civil responsibility established, by force of the maxim *qui facit per alium facit per se,*[4] at least as early as the 14th century." *United States v. Lester*, 363 F.2d 68, 72 (6th Cir.1966) *cert. denied* 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967) (citing *United States v. Gooding*, 25 U.S. (12 Wheat.) 460, 6 L.Ed. 693 (1827)). *See* Syre, Criminal Responsibility for the Acts of Another, 43 Harv. L.Rev. 689 (1930). .

Pursuant to Section 271(1), as at common law, the innocence of the intermediary is irrelevant in determining the guilt of the defendant who causes the innocent intermediary to act, because the latter is viewed legally as only an instrumentality of the crime. *State v. Thomas*, 619 S.W.2d at 514; 11 *Del.C.* § 272(1). Thus, Section 271(1) codifies the well-established common law precept that "a person who causes a crime to be committed through the instrumentality of an innocent agent is punishable as a principal. . . ." 22 C.J.S. Criminal Law § 131; *State v. Thomas*, 619 S.W.2d at 514. *See also Yeager v. State*, Mo.App., 786 S.W.2d 210 (1990). Therefore, the Superior Court properly held that Morrisey's criminal liability for Unlawful Sexual Intercourse in the First Degree could be predicated upon his actions through the instrumentality of an innocent intermediary.[5]

---

**4.** *Qui facit per alium facit per se.* "He who acts through another acts himself [i.e., the acts of an agent are the acts of the principal]." Black's Law Dictionary, 6th Edition.

**5.** Morrisey also cited the language of the unlawful sexual contact statute to support his argument that Section 271 could not be used as a predicate for his criminal liability. 11 *Del.C.* § 767. Morrisey argued that the inclusion of

### No Multiplicity Separate Acts/Separate Victims

■ Morrisey was charged with twelve counts of Unlawful Sexual Intercourse in the First Degree. Those twelve charges were based upon the number of separate acts of sexual intercourse he forced his victims to perform (three) and upon the number of victims (four). Therefore, each separate act of sexual intercourse (penile/vaginal union, fellatio and cunnilingus) resulted in Morrisey's indictment for two counts of Unlawful Sexual Intercourse in the First Degree, because each act of sexual intercourse involved two victims.

At trial, Morrisey filed a motion to merge the offenses which involved each couple (two victims) but resulted from a single act of sexual intercourse, thereby reducing the number of counts of Unlawful Sexual Intercourse from twelve to six. Morrisey's motion was based upon constitutional principles of multiplicity. Morrisey also relied upon *Reader v. State*, Del.Supr., 349 A.2d 745, 747 (1975).[6] The Superior Court denied Morrisey's motion.

" 'Multiplicity is defined as the charging of a single offense in more than one count' of an indictment." *Feddiman v. State*, Del.Supr., 558 A.2d 278, 288 (1989) (quoting *Harrell v. State*, 88 Wis.2d 546, 277 N.W.2d 462, 464–65 (1979)). "The division of a single offense into multiple counts of an indictment violates the double jeopardy provisions of the Constitutions of the State of Delaware and of the United States. Del. Const. art. I, § 8; U.S. Const. amend. V." *Feddiman v. State*, 558 A.2d at 288. Morrisey's argument, in the Superior Court and in this Court, is that the State's allegations

in twelve of the counts in the indictment, if true, only prove six offenses, i.e., three acts of sexual intercourse by two different couples. The State contends that each of the twelve counts in the indictment accurately charges an independent offense, because each of the six acts of sexual intercourse, which Morrisey caused to occur, involved two victims.

This Court has held that " '[a] person who commits multiple sexual assaults upon the same victim may be held responsible for, and punished for, each separate and distinct act,' albeit a violation of the same statute." *Feddiman v. State*, Del.Supr., 558 A.2d 278, 289 (1989) (quoting *Harrell v. State*, 88 Wis.2d 546, 277 N.W.2d 462, 471 (1979)). Therefore, in this case, with regard to each victim, the State could properly charge Morrisey with three separate counts of Unlawful Sexual Intercourse in the First Degree, because fellatio, cunnilingus, and penile/vaginal union each constitute a separate act of sexual intercourse. 11 *Del.C.* § 761(e)(1). Similarly, this Court has held that when "a single or continuous act or transaction involves a crime of violence against different persons, separate charges are permissible." *McCoy v. State*, Del.Supr., 361 A.2d 241, 243 (1976) (citing *People v. Knowles*, 35 Cal.2d 175, 217 P.2d 1 (1950)); *Harrigan v. State*, Del.Supr., 447 A.2d 1191, 1192 (1982); and *Kile v. State*, Del.Supr., 382 A.2d 243, 245 (1978). *See also* 11 *Del.C.* § 206(a). Therefore, for each separate act of sexual intercourse Morrisey forced each couple to perform, Morrisey could properly be charged with two offenses, one for each male and female victim.

"third person" language in the sexual contact statute, and its omission from the sexual intercourse statute, indicates that the General Assembly did not intend to impose criminal liability for unlawful sexual intercourse based upon the actions of an innocent intermediary. Morrisey's argument, if accepted, would require this Court to conclude that the General Assembly intended to eliminate the long established precept of legal liability for actions through the instrumentality of an innocent intermediary, as that precept is discussed in the text of this decision, from the crime of unlawful sexual intercourse. "What has been described as the 'golden rule' of statutory construction provides

that the unreasonableness of the result produced by one among alternative interpretations of a statute is just cause for rejecting that interpretation in favor of the interpretation that would produce a reasonable result." *Daniels v. State*, Del.Supr., 538 A.2d 1104, 1109–10 (1988). This Court has concluded that the result of Morrisey's proposed interpretation of Section 271(1) is unreasonable. *Id.*

**6.** *Reader* is distinguishable. At issue in *Reader* was the theft of property belonging to several people during a single burglary, not a crime of violence against more than one person.

Each act of sexual intercourse which Morrisey forced to occur in this case was an offense that denigrated two innocent individuals. Just as a person who commits multiple sexual assaults upon the same victim may be held responsible for each separate act, a person who commits a simultaneous sexual assault upon two victims may be held responsible for an offense against each of those individuals. *See Feddiman v. State*, 558 A.2d at 289. The Superior Court properly denied Morrisey's motion to dismiss six counts of Unlawful Sexual Intercourse in the First Degree on the grounds of multiplicity. *Id.*

### Robbery Conviction Sufficiency of Evidence

■ Morrisey argues that the evidence was insufficient to sustain his conviction to Count XVIII of the indictment, charging him with Robbery in the First Degree. Morrisey's commission of that offense was related to the theft of Parkins' car keys. When a defendant argues that the evidence was insufficient to support a guilty verdict, the proper standard of appellate review requires this Court to determine "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the [prosecution]", could have found the essential elements of the charged offense beyond a reasonable doubt. *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355 (1991) (citing *Shipley v. State*, Del.Supr., 570 A.2d 1159, 1170 (1990)) (emphasis in original).

The record reflects that Morrisey suspected Dugan and Parkins had valuables in each of their cars. At gun point, Morrisey told them to remove their car keys from their pockets and throw them to him. Dugan and Parkins complied, throwing their keys onto the ground in Morrisey's direction. Morrisey then apparently picked up Dugan's keys but either missed or dropped Parkins' keys, which were later found on the ground in the area. Property was stolen from Dugan's car but not from Parkins' car. Morrisey argues that the State's evidence was insufficient to establish the elements of Robbery in the First Degree with respect to the taking of Parkins' keys.

Under Delaware law, robbery involves, *inter alia*, the use or threat of force upon another person "in the course of committing theft" with intent to "compel the owner of the property ... to deliver up the property...." 11 *Del.C.* § 831(2). "A person is guilty of theft when he takes, exercises control over or obtains property of another person intending to deprive him of it or appropriate it." 11 *Del.C.* § 841. The commentary notes that the foregoing "first paragraph of § 841 is considerably broader than the common law." *Del.Crim.Code With Commentary* 270 (1973). For example, "exercise control" is described as a new concept to Delaware law which "covers the case where there is no asportation." *Id.* at 269.

The first paragraph of Section 841 includes two distinct concepts of culpability. *Id.* at 270. The actor's intent may be either to "appropriate" the property for his own use or to "deprive" the owner of the property. *Id.* According to the commentary, "deprive" includes "a disposition making it unlikely that the owner will recover the property, *as where the property is left in an isolated place.*" *Id.* (emphasis added). *See also* 11 *Del.C.* § 857(1). The commentary characterizes "appropriate" as a "permanent *or temporary*" taking in which the actor's motive is personal gain. *Id.* (emphasis added). *See also* 11 *Del.C.* § 857(2).

In this case, the object of the theft was Parkins' car keys. According to the State's evidence, Morrisey stated that he intended to use the keys to gain access to Parkins' locked car and to steal any valuables that she had left there. The State's evidence also established that Morrisey threatened Parkins with the use of force and displayed what appeared to be a handgun.

The State's testimonial evidence established that Morrisey obtained or exercised control over Parkins' car keys with the intention of appropriating them for his personal gain. 11 *Del.C.* § 841. Although Parkins' car keys were recovered in the

area of the crime scene, the commentary to Section 841 states that the term "exercises control", as specifically intended, *"covers the case in which there is no asportation."* Del.Crim.Code with Commentary 269 (1973) (emphasis added). Thus, the record reflects that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, the essential elements of Count XVIII of the indictment, charging Morrisey with Robbery in the First Degree.[7] *Robertson v. State*, Del. Supr., 596 A.2d 1345, 1355 (1991).

### *Refusal to Excuse Juror Proper Exercise of Discretion*

 The State called Raymond Evans as a rebuttal witness. Evans had provided information to the police which had led to Morrisey's arrest. Evans had not been included in the pre-trial witness list. Therefore, before Evans testified, the trial judge asked the jurors if any of them knew Raymond Evans.

One juror responded affirmatively to that question. During an *in camera* hearing, the juror explained that she was employed as a bank teller. Several years before, Mr. Evans had made regular visits to the bank in which the juror worked to make commercial deposits for his mother, who owned a store. The juror's only contact with Evans had been in her capacity as a bank teller. The juror stated that she had not seen Evans for two or three years.

In response to questioning by the trial judge, the juror stated that her previous contact with Evans would not affect her ability to remain impartial. Morrisey's defense attorney, "out of an overabundance of caution," moved to have the juror excused from further participation in the trial. The Superior Court denied the motion. The Superior Court ruled that there was no indication the juror's previous contact with Evans would affect her impartiality.

Morrisey submits that the Superior Court committed reversible error by failing to excuse the juror. The determination of a juror's impartiality is the responsibility of the trial judge who has an opportunity to question the juror, observe the juror's demeanor, and evaluate the juror's ability to render a fair verdict. *Skinner v. State*, Del.Supr., 575 A.2d 1108, 1120 (1990). *See also Weber v. State*, Del.Supr., 547 A.2d 948, 953 (1988). "The mere fact that a juror is a casual acquaintance of a witness is not a basis for automatic disqualification." *Id.* (citing *Weber v. State*, 547 A.2d 948.

In this case, the juror stated that her only contact with the witness, Evans, was through her employment as a bank teller. The juror had no contact with the witness for at least two years prior to Morrisey's trial. The juror stated that her previous contacts with the witness would not affect her ability to remain impartial.

A trial judge's determination not to discharge a juror, following *voir dire*, will not be overturned by this Court in the absence of a demonstration of a "prejudicial abuse" of discretion. *Skinner v. State*, 575 A.2d at 1121, citing *Williams v. State*, Del. Supr., 494 A.2d 1237, 1243 (1985). In view of the casual nature of the contact between the juror and the witness, its remoteness in time, and the juror's response to questioning about her ability to render an impartial verdict, the record reflects that the trial judge's decision not to discharge the juror, following *voir dire*, did not constitute a prejudicial abuse of discretion. *Id.* This Court finds Morrisey's argument to the contrary is not supported by the record.

### *Conclusion*

The judgments of the Superior Court are AFFIRMED.

---

**7.** The factual basis established by the State to convict Morrisey of this count in the indictment is analogous to a situation where the State's evidence demonstrates that a defendant has taken money from a person by the threat of force and subsequently dropped that money at the crime scene.