Timothy WILLIAMS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 54, 2001.

Supreme Court of Delaware.

Submitted: Feb. 21, 2002.
Decided: May 9, 2002.

Bernard J. O'Donnell, Esquire of the Public Defender's Office, Wilmington, Delaware, for Appellant.

John Williams, Esquire of the Department of Justice, Dover, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, and BERGER, Justices.

VEASEY, Chief Justice.

The principal issue before us on this appeal is whether a person may be charged two times with possession of a controlled substance, under the same statute, even though the offenses occurred at the same time, in the same location and with one intended purpose. We hold that this is multiplicitous and violates the constitutional prohibition against double jeopardy. Accordingly, we reverse the defendant's sentences for two counts of possession with intent to deliver cocaine. In all other respects we affirm

the judgment of the Superior Court. We remand this case to the Superior Court for sentencing purposes.

### Facts

On May 18, 2000, the Laurel and Delmar police departments obtained a search warrant for the apartment of Timothy Williams, defendant below and appellant. The police had been investigating Williams as a suspect for dealing drugs since December of 1999. Williams shared this apartment with his girlfriend, Mindy Calloway, and their infant daughter.

While en route to execute this search warrant the police stopped a car that Calloway was driving, and in which Williams was a passenger, when the car was approximately 500 feet from the apartment occupied by Williams and Calloway. After removing Williams and Calloway from this car, the police found two plastic bags containing cocaine on the floor behind the driver's seat. The bags contained 0.46 and 0.56 grams of cocaine. The police also found $614 in Williams' possession and $937 in Calloway's possession even though neither was employed at the time. Both Calloway and Williams were arrested.

After the police made these arrests, they proceeded to the apartment to execute the search warrant. At the apartment the police found three plastic bags of cocaine in the baby's room. The bags contained 10.23, 1.05, and 1.23 grams of cocaine. The police also found other drug paraphernalia in the kitchen.

The State indicted Williams for two counts of possession with intent to deliver cocaine,[1] one count of maintaining a dwelling for keeping controlled substances,[2] one

1. 16 *Del. C.* § 4753A(a)(2)(a).

2. 16 *Del. C.* § 4755(a)(5).

count of possession of drug paraphernalia,[3] and one count of maintaining a vehicle for keeping controlled substances.[4] One of the counts of possession was for the drugs found in the car, and one was for the drugs found in the apartment. The jury found Williams guilty of all of the charges against him. This is Williams' direct appeal.

### Issues Raised on Appeal

On appeal, Williams raises four issues. He argues that the Superior Court committed the following errors: (1) charging and punishing him twice for possession with intent to deliver cocaine in violation of the multiplicity doctrine of the Double Jeopardy Clauses of the United States and Delaware Constitutions; (2) admitting evidence, without objection, of his prior association with drug dealers without undergoing a formal *Getz* analysis and without issuing a limiting instruction regarding this evidence; (3) admitting evidence, without objection, of his crimes of dishonesty for impeachment purposes without issuing a limiting instruction; and (4) failing sua sponte to issue a limiting instruction after defense counsel objected to first person statements in the prosecutor's rebuttal closing argument.

### The Multiplicity Doctrine and the Illegal Possession of Controlled Substances

Williams' first argument on appeal is that charging him with possession with intent to distribute cocaine for the drugs found in the car and again for possession with intent to distribute cocaine for the drugs found in his apartment was plain error [5] and multiplicitous because he constructively possessed all the cocaine at the same time, in the same relative location and with one "unifying intent to distribute" the drugs.[6]

 We agree that these charges violated the multiplicity doctrine of the Double Jeopardy Clauses of the United States and Delaware Constitutions. Williams first raised this issue on appeal. Issues that are not fairly raised to the trial court are reviewed for plain error.[7] Under Delaware law, plain error occurs when an "error [is] so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process ... [and is a] material defec[t] which [is] apparent on the face of the record [and is] basic, serious and fundamental...."[8] We conclude that this was plain error.[9] Accordingly, we reverse the judgment of the Superior Court on this issue and remand for proceedings consistent with this opinion.

 The Double Jeopardy Clause of the United States Constitution states that no "... person [shall] be subject for the same offense to be twice put in jeopardy of life or limb...."[10] The Delaware Constitution similarly states that "no person shall be for the same offense [be] twice put in

---

**3.** 16 *Del. C.* § 4771.

**4.** 16 *Del. C.* § 4755(a)(5).

**5.** *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

**6.** *Rashad v. Burt,* 108 F.3d 677, 680 (6th Cir.1997).

**7.** Supr. Ct. R. 8.

**8.** *Wainwright,* 504 A.2d at 1100.

**9.** *See Fuller v. State,* 2002 WL 86684, at *2–3, 2002 Del. LEXIS 13, at *8 (Del.Supr.); *McCane v. State,* 2001 WL 898622, *2, 2001 Del. LEXIS 336, at *7 (Del.Supr.); *Winston v. State,* 1993 WL 22014, *2, 1993 Del. LEXIS 17, at *5 (Del.Supr.).

**10.** U.S. Const. amend. V.

jeopardy of life or limb...."[11] Double jeopardy, as a constitutional principle, provides the following protections: (1) against successive prosecutions;[12] (2) against multiple charges under *separate statutes;*[13] and (3) against being charged multiple times under the *same statute.*[14] In Williams' case the only applicable principle is whether charging someone multiple times under the *same statute* violates double jeopardy and the doctrine of multiplici-

ty. Multiplicity is "the charging of a single offense in more than one count of an indictment."[15] Dividing one offense into "multiple counts of an indictment violates the double jeopardy provisions of the constitutions of the State of Delaware and of the United States."[16]

Williams relies on, and we adopt, the rationale used by the United States Court of Appeals for the Sixth Circuit in *Rashad v. Burt*[17] in determining that the two

**11.** Del. Const. art. I, § 8.

**12.** *Schiro v. Farley,* 510 U.S. 222, 229–30, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (holding that the "Double Jeopardy Clause ... protects against a second prosecution of the same offense after acquittal [and] conviction") (citations omitted). This principle of double jeopardy, however, is not applicable to this case because Williams was only prosecuted once.

**13.** *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180 (1932). In *Blockburger,* the Supreme Court articulated the same-elements test to determine whether double jeopardy has been offended when a person is charged with violating *two statutes* as a result of one act. "[T]he question is whether, both sections being violated by the same act, the accused committed two offenses or only one." *Id.* The standard used in *Blockburger* is "whether each [statutory] provision requires proof of a fact which the other does not." *Id.* This principle of double jeopardy, however, is not applicable here because this case addresses only one statute.

**14.** *United States v. Forman,* 180 F.3d 766, 769 (6th Cir.1999) ("The issue in *Rashad* was whether the defendant had committed one as opposed to two discrete violations of the same statute, not whether the defendant was charged twice for the same violation."). Clearly, this is the exact issue addressed in this case because Williams was charged twice with violating the *same statute.*

**15.** *Feddiman v. State,* 558 A.2d 278, 288 (Del. 1989). *Feddiman* and other Delaware case-law on the multiplicity doctrine concern factual situations involving sexual assault. *Cintron v. State,* 2000 WL 201203, *1–2, 2000 Del. LEXIS 43, at *4 (Del.Supr.) (holding that each charge in the indictment represented a

"separate instance of prohibited conduct" even though they violated the same statute); *Morrisey v. State,* 620 A.2d 207, 212 (Del. 1993) (holding that each sexual assault on a victim is punishable as a "separate and distinct act" even though there has been a violation of only one statute); *Feddiman,* 558 A.2d at 288. *Feddiman 's* definition of multiplicity, however, is applicable to other factual situations such as this one.

**16.** *Feddiman,* 558 A.2d at 288.

**17.** 108 F.3d 677, 680 (6th Cir.1997). Although the Sixth Circuit criticized *Rashad* in *United States v. Williams,* 155 F.3d 418 (4th Cir.1998), for being "inconsistent with a wealth of Supreme Court authority," *id.* at 420–21, there is ample evidence that this concern is inapplicable to this case. In *Williams,* the defendant was being prosecuted *twice* under *different statutes. Id.* at 420. In *Williams* the two charges were "conspiracy to retaliate against Governmental witnesses and murder in aid of racketeering." *Id.* Under those facts, *Blockburger* and the same-elements test would clearly be operative and controlling, which would make *Rashad* clearly inapplicable. In *Rashad* and in the instant case, however, the defendant is being prosecuted *twice* under the *same statute,* a situation that highlights a different principle encompassed in the Double Jeopardy Clause. This distinction was squarely articulated by the Sixth Circuit in *Forman,* 180 F.3d at 769. In *Forman,* the court stated that "[t]he issue in *Rashad* was whether the defendant had committed *one as opposed to two discrete violations of the same statute,* not whether the defendant was charged twice for the same violation." *Id.* (italics added). The court in *Forman* also emphasizes the vitality of *Rashad* by stating:

counts of possession with intent to deliver cocaine are multiplicitous on these facts. In *Rashad* the defendant was charged with two counts of possession with intent to deliver cocaine, as was Williams here.[18] The question in *Rashad,* as in this case, was whether one violation of a single statute or two discrete violations of that same statute had occurred.[19] In *Rashad,* as in this case, the police found cocaine in the defendant's house and in a car of his that was on the premises.[20] In *Rashad,* however, the police did not discover the cocaine in the car until one week after the car had been impounded.[21] The defendant was tried in two separate proceedings and convicted twice.[22]

■ The Court of Appeals held this to be a violation of the multiplicity doctrine of double jeopardy because Rashad "possessed the full amount of cocaine with the same intent of distributing it at whatever future times, and in whatever amounts best suited him."[23] The court also went on to state that "[a]bsent evidence of separate and distinct dedications of the two caches, his possession was a single and undivided transaction," regardless of the one week time gap.[24] Additionally, the court articulated the following test: "[I]f the possessions are sufficiently differentiated by *time, location or intended purpose,*" then there is no double jeopardy violation for convicting someone for possession of the same substance.[25] This test consists of factors a court may use in determining, under the circumstances, whether two violations of same statute have occurred.

First, all the drugs in the *Williams* case were found at the same time and during

---

Although some of the language in *Rashad* would seem to endorse the "same evidence" test outside of situations where the concern is whether the prosecution has impermissibly divided defendant's conduct so that it may bring repeated prosecutions under the same statute, it is clear from the *Rashad* opinion that the referenced language is to be limited in its application to circumstances such as were present in that case. *Id.* at 770. Additionally, other courts have chosen to follow *Rashad* even after *Williams.* E.g. *Commonwealth v. Rabb,* 431 Mass. 123, 725 N.E.2d 1036, 1041 (2000); *In re Personal Restraint of Davis,* 95 Wash.App. 917, 977 P.2d 630, 631 (1999). Hence, the double jeopardy principle articulated in *Rashad,* in which the concern is whether the state has impermissibly divided one unit of conduct into two or more units of conduct for purposes of charging someone under the same statutory provision, will control in the instant case.

18. *Rashad,* 108 F.3d at 680.

19. *Id.*

20. *Id.*

21. *Id.* at 678.

22. *Id.* at 679.

23. *Id.* at 681.

24. *Id.* The term *single transaction* has caused some confusion in this area of the law. The United State Supreme Court in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), held that the Court "steadfastly refuse[s] to adopt a *single transaction* view of the double jeopardy clause...." *Id.* at 790, 105 S.Ct. 2407. This was in the context of two statutes, thus implicating *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. For example, in *Garrett* the same facts were being used to prosecute someone for violating two separate statutes, one of which was a lesser included offense of the other. *Garrett,* 471 U.S. at 790, 105 S.Ct. 2407. As a result, the test articulated in *Rashad* does not offend the rule set forth in *Garrett* rejecting the single transaction approach to double jeopardy. *Id.*

25. *Rashad v. Burt,* 108 F.3d 677, 681 (6th Cir.1997) (italics added). This test does not offend the same-elements test set forth in *Blockburger. Supra* note 13.

the same police confrontation.[26] In *Rashad*, by contrast, the police did not find the drugs in the vehicle until one week after the initial seizure.[27] Thus, this is an a fortiori case for a double jeopardy violation under this factor.

Second, the drugs were in the same general location because the car was in close proximity to the apartment. All the cocaine was within Williams' reasonable control because he was in the vehicle at the time the cocaine was found. Regardless of whether the drugs were in the apartment or in the car 500 feet from apartment, this possession represented a single instance of possession, with two hiding places for the drugs.

Finally, Williams' possession of cocaine shows that he "displayed a single intent and goal—distribution."[28] Williams had one intended purpose for all of the drugs confiscated during this police confrontation: to distribute them. There is no evidence that indicates more than one intent to distribute cocaine. Moreover, the separate packaging supports an inference of a unified intent to distribute all the cocaine in Williams' possession. The packaging tends to show that Williams formulated a single intent to distribute his entire stash of cocaine and separated the cocaine into a mobile cache and a non-mobile cache. Williams possessed all the cocaine for one purpose: delivery.

Other federal cases have used a standard similar to *Rashad*, some finding no multiplicity violation[29] and some finding a violation.[30] In *United States v. Rodriguez–Ramirez* the defendant delivered a small cache of heroin to an undercover police officer at one location, and the State construed that as one crime—intent to distribute a controlled substance.[31] Two days later, the police found a much larger cache of heroin at a different location and charged the defendant with a separate crime—possession with intent to distribute a controlled substance.[32] The defendant

---

26. *See Briscoe v. United States*, 528 A.2d 1243, 1247 (D.C.App.1987). In *Briscoe*, the police found marijuana in the kitchen and the bedroom of the defendant's apartment while executing a search warrant. *Id.* The court held that this factual scenario gave rise to a single criminal act, punishable only once. *Id.*

27. *Rashad*, 108 F.3d at 679.

28. *Id.* at 682.

29. *See, e.g., United States v. Rowland*, 1995 WL 422746, at *4 (E.D.Pa.) (holding that when a defendant is prosecuted twice, one in a state and one in a federal court for possession with intent to deliver methamphetamines based on drugs found in the defendant's car and in the defendant's home, "separate and distinct instances of criminal conduct" occurred and double jeopardy was not violated); *United States v. Maldonado*, 849 F.2d 522, 524 (11th Cir.1988) (holding that when a defendant possessed cocaine in two different locations, a car and a home, and in two different counties, two offenses have occurred); *United States v. Palacios*, 835 F.2d 230, 233–34 (9th Cir.1987) (holding that "[b]ecause the distribution of the sample [of counterfeit bills] and the possession of the remainder did not occur 'at the same time [and] in the same place . . . separate convictions and punishments for these two violations are appropriate' "); *United States v. Blakeney*, 753 F.2d 152, 155 (D.C.Cir.1985) (holding that when a defendant possesses marijuana at home and at the workplace at two separate times, "two separate and distinct possessions" have occurred).

30. *See, e.g., United States v. Palafox*, 764 F.2d 558, 562 (9th Cir.1985) (holding that when "each offense [was] committed at virtually the same time, in the same place and with the same participants the punishment should not be compounded"); *United States v. Williams*, 480 F.2d 1204, 1205 (6th Cir.1973) (holding that a defendant who possessed four bags of heroin at the same place and at the same time committed one offense, not four).

31. 777 F.2d 454, 457–58 (9th Cir.1985).

32. *Id.*

argued that he should have been charged once because there was a "continuous course of conduct."[33] The court, however, looked at the time and place of distribution and possession, and determined that two violations had occurred.[34] Although in this case a violation of the Double Jeopardy Clause was not found, the analysis in *Rodriguez–Ramirez* is consistent with *Rashad.*[35]

Adopting *Rashad's* test is consistent with Delaware case law regarding multiplicity.[36] For example, in *Feddiman v. State,* this Court held that a person *could* be punished for "separate and distinct act[s]" that violate the *same statute* as long as the defendant formulated a *separate intent* each time the statute was violated.[37] *Feddiman* dealt with separate and distinct acts of sexual assault where, accordingly, the defendant formulated the intent to commit each assault and separately violated the same statute numerous times during one continuous attack of the victim.[38] Williams, on the other hand, did not formulate two separate intents to distribute cocaine even though he separated the cocaine into different caches. Accordingly, the multiplicity doctrine applies.

### *Admission of Prior Bad Acts*

Williams' second contention on appeal is that it was plain error for the Superior Court to admit testimony regarding his prior association with drug dealers because it was evidence of a prior bad act. As evidence of a prior bad act, Williams argues that this evidence necessitated a relevance review under *Getz v. State,* and that the court committed error by not issuing sua sponte a limiting instruction when counsel failed to request one.[39]

■ On direct examination of the arresting officer the Superior Court admitted in evidence Williams' admission that he had prior interactions with drug dealers six months before his arrest. Williams' counsel did not make a timely objection to the admission of this evidence. In fact, Williams' counsel did not object to this evidence until the State again referred to it while cross-examining Williams. The Superior Court sustained this objection and held that these statements were relevant only for the limited purpose of showing access to a source of supply of drugs and not to show that Williams was a bad person for associating with drug dealers. The court did not sua sponte issue a limiting instruction on the previously admitted evidence to which there was no objection.

■ We hold that Williams' argument is without merit. Williams' testimony was relevant under *Getz* to show that he had an immediate source of contraband drugs. Although a limiting instruction should have been given, the lack of a limiting instruction, on these facts, was not plain error and did not jeopardize the fairness and integrity of Williams' trial.

■ Generally, pursuant to *Getz,* a court may not admit evidence solely to support an inference of bad character or criminal disposition.[40] Nevertheless, "[e]vidence of

---

**33.** *Id.*

**34.** *Id.*

**35.** 108 F.2d at 680.

**36.** *Cintron v. State,* 2000 WL 201203, *1–2, 2000 Del. LEXIS 43, at *4 (Del.Supr.); *Morrisey v. State,* 620 A.2d 207, 212 (Del.1993).

**37.** 558 A.2d 278, 289 (Del.1989).

**38.** *Id.*

**39.** 538 A.2d 726, 730 (Del.1988); D.R.E. 404(b).

**40.** 538 A.2d at 730, 734.

prior misconduct is admissible when it has 'independent logical relevance,'" or when it is relevant under one of the enumerated reasons [41] in D.R.E. 404(b) such as "proof of motive, opportunity, intent, preparation, plan [or] knowledge." [42] This Court in *Getz* also articulated the guidelines for admissibility of this type of evidence. The guidelines are as follows:

> (1) evidence ... must be material to an issue or ultimate fact in dispute ...; (2) admissible ... [under D.R.E.] 404(b); (3) ... proved by "plain, clear and conclusive" [evidence]; (4) not ... too remote in time from the charged offense; (5)[not] unfairly prejudicial as required by D.R.E. 403; [and] (6) admitted for a limited purpose ... [with] instruct[ion].[43]

This Court held in *Weber v. State*, under the circumstances of that case where there had been a timely objection,[44] that because evidence of this nature " 'must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence [is being] admitted' ... the failure to give such an instruction [is] reversible error." [45] Failure to give an instruction is reversible error because "the trial court's failure to limit the jury's consideration of the evidence allows them to speculate well beyond the very limited findings the trial court makes in its decision to admit the evidence in the first instance." [46]

Even though the Superior Court did not go through a formal *Getz* analysis this statement, when analyzed, satisfies five out of the six *Getz* factors. First, the statement that Williams personally knew the leader and members of a "drug distribution organization" was material to show that he had the opportunity to obtain large quantities of drugs for potential distribution. Second, opportunity to commit a crime is one of the enumerated factors in D.R.E. 404(b), and this statement clearly reflected an opportunity to possess drugs with an intent to distribute. Third, Williams made an admission against interest.[47] Williams' statement that he associated with drug dealers has the indicia of believability because it was against his interest. Fourth, because the police had been investigating Williams for approximately one year before his arrest, a six-month time gap between the time Williams was charged and his last communication with these drug dealers does not make the statement too remote. Fifth, the prejudice Williams would suffer from admission of this statement would not substantially outweigh the probative value [48] of showing Williams' opportunity to commit the crime. The State already had a strong case against Williams using the physical evidence presented at trial.

Finally, we address the fact that the Superior Court did not sua sponte give a

---

41. *Id.* at 731. In *Getz*, we determined that an "inclusionary construction" should be used to interpret the language in D.R.E. 404(b). The inclusionary approach states that "the proponent is allowed to offer evidence of uncharged misconduct for *any* material purpose other than to show a mere propensity or disposition on the part of the defendant to commit the charged crime." *Id.* at 731 (emphasis added).

42. *Id.* at 730.

43. *Id.*

44. 547 A.2d 948, 955 (Del.1988) (noting that "Weber objected to the admission of these statements").

45. *Id.* at 956 (quoting *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176, 179 (1985)).

46. *Milligan v. State*, 761 A.2d 6, 10 (Del. 2000).

47. D.R.E. 801(d)(2).

48. D.R.E. 403.

limiting instruction. We do not find this omission to be plain error. We have held that a trial court generally does not commit plain error if it fails to give a limiting instruction, sua sponte, when evidence of prior bad acts is admitted.[49] Therefore, we hold that *Weber* is distinguishable because it involved a timely objection.[50] Accordingly, the failure to give an instruction sua sponte does not rise to the level of plain error.[51]

### Declarant's Admission to a Prior Crime of Dishonesty

Williams' next contention on appeal is that, although his crime of dishonesty was properly admitted for the purpose of impeaching him at trial,[52] the Superior Court committed plain error by not sua sponte issuing a limiting instruction regarding this evidence. We hold that, even though the judge erred in failing to issue a limiting instruction, this error does not rise to the level of plain error.

■■■■ Under D.R.E. 609(a), it is permissible to attack the credibility of a witness by admitting crimes of dishonesty without balancing the prejudicial effect of the conviction against its probative value.[53] On the other hand, character evidence is not admissible to show that the witness acted in conformity therewith. This is because there is a possibility that the jury may use the impermissible inference rather than the permissible evidence to convict the defendant.[54]

■■■■ In Williams' trial, the State confronted Williams during cross-examination regarding his convictions for crimes of dishonesty. Williams admitted to one of the convictions. Plain error is a "material defec[t] which [was] apparent on the face of the record, which [was] basic, serious and fundamental in ... character, and which clearly deprive[d] an accused of a substantial right or which clearly show[ed] manifest injustice" occurred.[55] This Court has previously ruled that the lack of a limiting instruction, in the context of prior crimes, is not plain error.[56] Accordingly, the fact that the jury heard of Williams' prior crime of dishonesty is not plain error because it did not deprive Williams of a

**49.** *Dickerson v. State*, 1998 WL 14999, *2, 1998 Del. LEXIS 4, at *5 (Del.Supr.); *Baker v. State*, 1993 WL 557951, *4–5, 1993 Del. LEXIS 486, at *14 (Del.Supr.) (holding that the "absence of a limiting instruction concerning the uncharged drug-related evidence, which was presented without objection, does not constitute grounds for reversal"); *Wooters v. State*, 1993 WL 169129, *2, 1993 Del. LEXIS 206, at *5 (Del.Supr.) (distinguishing between the requirement to give a limiting instruction regarding evidence of other crimes and discretion to give a limiting instruction regarding the admission of evidence concerning wrongs or acts which are not necessarily crimes); *Scott v. State*, 521 A.2d 235, 242 (Del.1987) (holding that it is not "plain error [when] a limiting instruction on the relevancy of defendant's convictions [is not given] without request for a limiting instruction by counsel").

**50.** *Supra* note 44.

**51.** *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

**52.** D.R.E. 609(a)(2).

**53.** *Id.*; *Gregory v. State*, 616 A.2d 1198, 1203 (Del.1992).

**54.** D.R.E. 609(a)(2).

**55.** *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

**56.** *Nelson v. State*, 2001 WL 458264, *2, 2001 Del. LEXIS 188, at *5–6 (Del.Supr.); *Trump v. State*, 753 A.2d 963, 965 (Del.2000); *Burke v. State*, 1997 WL 139813, *2, 1997 Del. LEXIS 95, at *6 (Del.Supr.); *Baker v. State*, 1993 WL 557951, *4–5, 1993 Del. LEXIS 486, at *14–16 (Del.Supr.); *O'Conner v. State*, 1990 WL 72606, *3–4, 1990 Del. LEXIS 151, at *8–11 (Del.Supr.).

substantial right or jeopardize the fairness of his trial.

### Prosecutorial Misconduct During Closing Arguments

 Williams' final contention in this appeal is that the prosecutor made two statements during closing arguments that alluded to the prosecutor's belief in Williams' credibility as a witness, thus unfairly prejudicing him and compromising his right to a fair trial. Also, Williams contends that the Superior Court should have sua sponte issued a limiting instruction regarding these statements. We review this claim for plain error.

 The statements made by the prosecutor in Williams' case were as follows: (1) "I find it funny that [Williams] says it is real important that he didn't own this car" in reference to the drugs being found in Calloway's car; and (2) "I find these things strange that [Williams] does these kinds of things" in reference to Williams' testimony about the procedure he took while detailing Calloway's car a few days before the drugs were found in the car.

 Under Delaware law, a prosecutor should avoid using the term "I" during closing argument because it "serves to emphasize for the jury that the prosecutor ... personally believes the point that is being submitted to the jury."[57] Prosecutors may not express their personal opinions or beliefs about the credibility of witnesses or about the truth of testimony.[58]

Thus, the prosecutor's comments were improper.

 This Court has repeatedly noted, however, that "[n]ot every improper remark by a prosecutor requires reversal, but only that which prejudicially affects substantial rights of the accused."[59] This Court first held in *Hughes v. State* and reaffirmed in *Trump v. State* that when "evaluating whether improper prosecutorial remarks have prejudiced the substantial rights of the accused this Court analyzes three factors: 'the closeness of the case, the centrality of the issue affected by the [alleged] error, and the steps taken to mitigate the effects of the error.'"[60]

This case was not close because there was ample evidence to support an inference that Williams was a drug dealer. The evidence in favor of Williams' possession with intent to deliver cocaine was as follows: (1) there was a large quantity of cocaine in the apartment where he allegedly lived; (2) the police found large quantities of money on Williams when they arrested him, even though he was unemployed at the time; (3) the cocaine in the vehicle and in the apartment was within Williams' "reasonable control"[61] because he had keys to the apartment and was a passenger in the car; and (4) Calloway, his girlfriend, testified at trial that she witnessed Williams complete a drug sale to one Hope Fogg in the apartment where the drugs were found while the police were executing the search warrant. Williams attempted to rebut this evidence

---

57. *Brokenbrough v. State*, 522 A.2d 851, 859 (Del.1987).

58. *Clayton v. State*, 765 A.2d 940, 942 (Del. 2001).

59. *Sexton v. State*, 397 A.2d 540, 544 (Del. 1979) (cited by *Brokenbrough*, 522 A.2d at 855).

60. *Trump*, 753 A.2d at 968 (quoting *Hughes v. State*, 437 A.2d 559, 571 (Del.1981)).

61. 16 *Del. C.* § 4701(28). This rule states that "'[p]ossession,' in addition to its ordinary meaning, includes location in or about the defendant's person, premises, belongings, vehicle or otherwise within the defendant's reasonable control." *Id.*

with the fact that he had lost his job a few days before his arrest, a fact he claims plausibly accounts for the large quantity of money on his person when he was arrested. A fellow inmate of Calloway with a prior conviction of a crime of dishonesty also testified that Calloway had admitted that the drugs were hers. The evidence in support of the inference that Williams was dealing drugs, therefore, far outweighs Williams' rebuttal evidence.

 We find that the Superior Court's efforts in this case were sufficient to mitigate any prejudicial effects from the prosecutor's comments. Although the Superior Court did not issue a curative instruction sua sponte regarding the prosecutor's improper statements, it took indirect steps to mitigate the effects of any prejudice from the statements by instructing the jury before deliberations that "it is not proper for an attorney to state his ... personal opinion as to the truth or falsity of any testimony."

The central issue in Williams' case was whether he intended to sell the drugs. Williams presented in his defense the testimony of a fellow inmate of Calloway that implicated Calloway, as well as Williams' own testimony that he did not intend to sell the drugs and that Calloway was the seller. The prosecutor's improper statements challenged Williams' credibility. Therefore, the prosecutor's improper comments directly affected a central issue in this case. Because the *Hughes* test is conjunctive and these statements did not satisfy all the elements of the test, we find that the prosecutor's statements, although improper, did not prejudicially affect Williams' right to a fair trial and did not require reversal.

Although the improper closing remarks in this case did not result in a reversal, we continue to admonish prosecutors not to push the envelope by engaging in such improper conduct in the apparent hope that defense counsel will not object or that the court will not find plain error. Likewise we admonish defense counsel to be vigilant and to object in these circumstances.[62]

### Conclusion

Because we find that charging Williams twice for possession with intent to distribute cocaine was multiplicitous and violated the constitutional prohibition against double jeopardy, we reverse his sentence for one of the possession charges and remand to the Superior Court for re-sentencing. We affirm the remainder of the judgment and sentence of the Superior Court.

---

**62.** *Trump,* 753 A.2d at 968.