# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW J. DEASCANIS, | ) | |
| | ) | |
| Defendant Below, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 1710014022 |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff Below, | ) | |
| Appellee. | ) | |

Submitted: July 19, 2019
Decided: October 18, 2019

*Appeal from Court of Common Pleas.*
**AFFIRMED**

## ORDER

1. On the night of October 23, 2017, Lt. John McDerby, an officer with the Division of Natural Resources and Environmental Control ("DNREC") was patrolling the area of the C&D Canal.[1] He came across a pair of headlights out in a field on the park grounds.[2] After investigating, he learned that the headlights belonged to a pickup truck that had overturned in the field.[3] In due course, it was

---

[1] D.I. 4 at 16.
[2] *Id.* at 29.
[3] *Id.* at 30–32.

learned that the Defendant, Andrew Deascanis, had been drinking and driving in the pickup truck and flipped it over while chasing deer across the field.[4]

2.     In a nutshell, those are the facts that brought the Defendant's case into the Court of Common Pleas, where he was tried for driving under the influence before a jury that found him guilty of the offense.[5] He filed this appeal making several claims of error in the Court of Common Pleas.[6] Each of these claims will be addressed *seriatim*.

3.     Defendant's first argument is that the evidence was insufficient to support a conviction.[7] When such claims are raised on appeal, the Court looks to at the evidence in the light most favorable to the verdict winner.[8]

4.     Here, the Defendant, once found in the field with his overturned truck, admitted he had been at a fundraiser at a bar earlier in the evening and then to another bar to watch a football game at which he drank, by his own admission, four beers.[9] Upon drinking beers and getting into his pickup truck, he decided that this would be a good night to venture out onto closed state parkland, through a field and, upon

---

[4] *Id.* at 35–39.
[5] D.I. 4 at 128.
[6] *See* D.I. 14.
[7] *Id.* at 4.
[8] *Anderson v. State*, 930 A.2d. 898, 901 (Del. 2007); *State v. Godwin*, 2007 WL 2122142, at *2 (Del. Super. Ct. July 24, 2007).
[9] D.I. 4 at 94.

2

observing a herd of deer, give pursuit across uncharted terrain.[10] When the deer turned, so did he, the deer apparently more deftly than his truck. The truck he flipped over had a cooler with beers in it.[11] The arresting officer noted that his speech was slightly slurred, his eyes were glassy and bloodshot, and he smelled of alcohol.[12]

5.    The testimony at trial indicated that the Defendant succeeded in passing a number of field sobriety tests, but when offered a portable breath tester and a later intoxylizer breath test, he demurred, professing a disbelief in the accuracy of the machinery.[13] This, apparently, is the basis for his belief that his conviction is without support in the record.

6.    But the Defendant's admissions to drinking that evening, the alcohol at the scene, his odor of alcohol, his bloodshot and glassy eyes, his recklessly flipping over his truck in an open field, and his refusal to undergo sobriety testing were all enough for the jury to conclude that he had been driving the truck while under the influence of alcohol.[14] Defendant continues to argue the evidence that was *not*

---

[10] *Id.* at 88.

[11] D.I. 4 at 35.

[12] *Id.* at 37–38.

[13] *Id.* at 100. *Church v. State*, 2010 WL 5342963, at * 2 (Del. December 22, 2010) ("A defendant's refusal to submit to testing may be used for any relevant purpose including to show consciousness of guilt"); *accord Rybicki v. State*, 119 A.3d 663, 675 (Del. 2015); *Shaw v. State*, 2007 WL 866196 *1 (Del. March 23, 2007) ("Chemical testing is not required to prove impairment").

[14] *State v. Durrant*, 188 A.2d 526, 528 (Del. 1963) ("[I]t is proper in a criminal case to show defendant's conduct, demeanor, and statements, whether oral or written . . .

present, (i.e., a blood alcohol test), and the differing explanations for the evidence that *was* present, (i.e., that he did not drink the beer cans that were found in the cooler), but those arguments were all placed before the jury and the jury found, on balance, that the State had made its case beyond a reasonable doubt.

7. Certainly, to give the Defendant his due, the verdict was not a foregone conclusion and the jury may have chosen to find the State's evidence insufficient to prove Defendant's guilty beyond a reasonable doubt. But this is the very essence of a jury verdict and presents no occasion for the Court to second guess the jury's decision. The State presented evidence on each element of the offense and the jury chose to credit the evidence presented by the State. The Court cannot overturn the verdict simply because the defendant still believes he should have been acquitted.[15]

8. Next, Defendant argues that the instructions were in error because the trial judge told the jury it "should consider only the evidence in the case" while the Superior Court standard jury instruction contains the somewhat sterner admonition that it "must determine whether the defendant is guilty or not guilty solely from the evidence presented during the trial."[16]

---

Their weight is for the jury to determine. The fact that defendant declined to submit to a sobriety test is such a circumstance which a jury may consider").

[15] *Davis v. State*, 453 A.2d 802 (Del. 1982); *Jackson v. Virginia*, 443 U.S. 307, 301 (1979); *Lively v. State*, 427 A.2d 882 (1981).

[16] D.I. 4 at 114.

4

9. So the argument is that it is fatal to the verdict if the judge says the jury "should" consider only the evidence at trial instead of the jury "must" consider only the evidence at trial.[17] The Supreme Court has said that in reviewing jury instructions, they will be deemed sufficient "so long as they are reasonably informative and not misleading, judged by common practices and standards of verbal communication."[18] Some deficiencies in jury instructions will be tolerated, so long as the instructions are "a correct statement of the substance of the law ... [and the jury was able to] intelligently perform its duty in returning a verdict."[19]

10. In this case, the jury was not invited to consider evidence that was not presented at trial. While "must" may connote a more mandatory, restrictive tone than "should," there was no other evidence the jury might have considered that could have changed the result. Additionally, this was not a case involving a violent assault or deeply held moral or religious beliefs that might cause a jury to base its verdict on matters not introduced at trial. Particularly in the absence of a contemporaneous objection to the instruction, the Court cannot find that the use of should instead of must was plain error implicating the Defendant's right to a fair trial.[20]

---

[17] D.I. 14 at 9–13.

[18] *Rybicki*, 119 A.3d 664, 675 (Del. 2015). *See also Flamer v. State*, 490 A.2d 104, 128 (Del. 1983); *Baker v. Reid*, 57 A.2d 103, 109 (Del. Super. Ct. 1947).

[19] *Rybicki*, 119 A.3d 664, 675 (Del. 2015) quoting *Floray v. State*, 720 A.2d 1132, 1138 (Del. 1998).

[20] *Sanders v. State*, 585 A.2d 117, 133 (Del. 1990).

11.   Defendant makes a generalized claim of prejudice from the prosecutor's repeated insertion of the first-person pronoun in his closing argument. It is well understood that the prosecutor is not permitted to insert his personal opinion of the defendant's guilt to the jury.[21] But the record clearly shows that the prosecutor was in fact admonished by the judge and jury was instructed to ignore comments of personal belief by the attorney.[22] Finally, the comments were not an inflammatory effort to get the jury to trust the prosecutor as the voice of the state but more the uncertain averments of a young prosecutor speaking to a jury honestly about his beliefs – error to be sure, but not deliberate jury manipulation. Defendant, to his credit, agrees the errors were in good faith and, the Court finds, did not so prejudice the jury as to undermine faith in the verdict.[23]

As Defendant has raised no issue on appeal warranting reversal of the jury's finding, his conviction is **AFFIRMED**.

**IT IS SO ORDERED**.

Judge Charles E. Butler

---

[21] *Morales v. State*, 133 A.3d 527, 530 (Del. 2016).

[22] D.I. 4 at 109.

[23] *Wiliams v. State,* 796 A.2d 1281, 1291 (Del. 2002) ("Prosecutors may not express their personal opinions or beliefs about the credibility of witnesses or about the truth of testimony . . . ."); *see also Brokenbrough v. State*, 522 A.2d 851, 855 (Del. Super. Ct. 1987) quoting *Sexton v. State*, 397 A.2d 540 (Del. Super. Ct. 1979) ("[N]ot every improper remark by a prosecutor requires reversal, but only that which prejudicially affects substantial rights of the accused").