**Lloyd DIXON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 426, 1994.

Supreme Court of Delaware.

Submitted: March 19, 1996.
Decided: April 4, 1996.

---

Nancy Jane Perillo, Assistant Public Defender, Wilmington, for Appellant.

Timothy J. Donovan, Deputy Attorney General, Wilmington, for Appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

VEASEY, Chief Justice:

In this appeal from convictions for Burglary First Degree and Robbery First Degree in which the defendant was sentenced to life imprisonment as an habitual offender, we consider: (1) the use of peremptory challenges by the State in an allegedly discriminatory manner; (2) the application of Delaware's robbery statute to an incident in which force was used solely in an attempt to escape after an attempted theft; and (3) the jury instructions appropriate to a situation in which the jury is allowed to find a defendant guilty based on either principal or accomplice liability.

We hold that the Delaware Criminal Code does not authorize conviction for robbery where there is no proof that the defendant used force to obtain stolen property and the defendant does not have possession of the stolen property when using force solely to effect an escape. Accordingly, we **REVERSE** on that ground, but **AFFIRM** in all other respects.

## I. The Facts

Lloyd Dixon, defendant-below, appellant ("Dixon"), was convicted after a jury trial of Burglary First Degree and Robbery First Degree. He was sentenced by the Superior Court, as an habitual offender, to life imprisonment without parole on the burglary conviction. Dixon was also sentenced to an additional twelve years on the robbery conviction.

After an evening out, Mark Merritt and John Wallace, along with their friends Edward Acevedo and Celeste Frecon, returned to their apartment on Delaware Avenue in Wilmington at approximately 11:30 p.m. They sat in the living room in the front of the apartment, talking and listening to music. Mr. Merritt unlocked the back door when they arrived, so his dog could go outside. At about 2:00 a.m. Mr. Wallace noticed the reflection of a man in the glass of a picture hanging on the living room wall. He testified that the reflection was moving across the picture as if the figure were leaving the apartment through the kitchen. He quickly told the others. Messrs. Merritt and Acevedo went to the back of the apartment to see what was afoot.

Mr. Merritt went to the bedroom, and Mr. Acevedo followed with a candlestick holder. When Mr. Merritt reached the bedroom, he saw Dixon standing in the walk-in closet going through the clothes. The bedroom had been ransacked, and Dixon was holding a yellow shirt which Mr. Merritt testified belonged to him. Dixon apparently tried to hide by closing the closet door but quickly realized he had been discovered. Dixon dropped the clothes and ran for the bedroom

door where Mr. Merritt was standing. Mr. Merritt tackled him as he passed into the sitting room. Dixon and Mr. Merritt fell to the kitchen floor and a struggle ensued. Mr. Acevedo meanwhile struck Dixon on the head with the candlestick holder, and Mr. Merritt held him down until the police arrived. Mr. Merritt testified at trial that Dixon did not have any of Mr. Merritt's property in his possession when he attempted to escape.

Once the police arrived and arrested Dixon, Messrs. Merritt and Wallace inventoried their possessions and discovered that both of their wallets and checkbooks, Mr. Wallace's passport, Mr. Merritt's watch and other small possessions were missing. They retrieved some of the missing property the following day when a woman called who had discovered some of their possessions in the bushes nearby.

## II. The State's Use of Peremptory Challenges Did Not Violate the *Batson* Doctrine

Dixon challenges the use of peremptory challenges by the State against three African-American venire members. He contends that the peremptory strikes violated his right to equal protection as enunciated by *Batson v. Kentucky*.[1]

▇ A *Batson* challenge to the use of peremptory strikes requires the following three steps: (1) the opponent of the strikes may establish a *prima facie* case of racial discrimination evidenced by a pattern of challenges; (2) the proponent of the strikes then has the burden of coming forward with a race-neutral explanation; and (3) if a race-neutral explanation is tendered, the trial court must decide whether the party contesting the strikes has proven racial discrimination. *Purkett v. Elem*, —— U.S. ——, ———–——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) (*per curiam*).

▇ In a *Batson* analysis, the issue whether the prosecutor offered a race-neutral explanation for the use of peremptory challenges is reviewed *de novo*. *See Her-*

---

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also Riley v. State*, Del.Supr., 496 A.2d 997 (1985).

*nandez v. New York,* 500 U.S. 352, 359–60, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395 (1991). Once this Court is satisfied with the race-neutrality of the explanation, the trial court's finding with regard to discriminatory intent will stand unless it was clearly erroneous. *Robertson v. State,* Del.Supr., 630 A.2d 1084 (1993) (citing *Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871–72).

▮ The State conceded, after the third peremptory strike against an African–American venire member, that the defendant had established a *prima facie* case under *Batson.* The State then offered explanations for each peremptory challenge. In order to rebut the *prima facie* case, the prosecutor must provide a "clear and reasonably specific" explanation of "legitimate reasons" for his use of the challenges that are "related to the particular case." *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. at 1723 n. 20. A "legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett,* —— U.S. at ——, 115 S.Ct. at 1771. The reason is race-neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation...." *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866.

▮ The prosecutor explained that he struck the first African–American juror because he did not have a juror card from which to assess the juror's suitability. Following what he stated to be his ordinary practice, the prosecutor struck this juror. This was a race-neutral explanation. He struck the other two African–American jurors because they had criminal records. The second juror had been arrested for misdemeanor theft and had been convicted of driving with a suspended license. This juror had also failed to answer a summons. The third juror had been arrested for shoplifting. The prosecutor stated that it was his practice to strike jurors with any but the most insignificant criminal records, such as minor traffic violations. He also stated that he had struck a white juror because of his motor vehicle record. These explanations are also facially race-neutral.

▮ Once the State offers race-neutral explanations for its use of peremptory challenges, the burden shifts to the opponent of the strikes to prove purposeful discrimination. *Purkett,* —— U.S. at ——, 115 S.Ct. at 1771. This is the stage at which the trial judge assesses the persuasiveness of the facially race-neutral justification by considering the "totality of the relevant facts," *Hernandez,* 500 U.S. at 363, 111 S.Ct. at 1868. Since this determination involves pure issues of fact, the trial court should be accorded substantial deference. *Batson,* 476 U.S. at 98, 106 S.Ct. at 1723–24. Thus, " '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871 (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). *Accord Robertson v. State,* Del. Supr., 630 A.2d 1084, 1090 (1993).

▮ It was not clearly erroneous for the Superior Court to believe the prosecutor's explanation and not find discriminatory intent. *Robertson,* 630 A.2d at 1090. The explanations were specific to the individual jurors, and the prosecutor struck a white juror for the same reasons. *Id.* at 1091. The ultimate composition of the jury—ten whites, two African–Americans and two African–American alternates—can never be dispositive but, in this case, also supports the Superior Court's finding. *Id.* Finally, the prosecutor ultimately used his peremptory strikes equally to exclude three African–American jurors and three white jurors.

**II. The Use of Force in an Attempt to Escape After an Attempted Theft, Without The Victim's Property, Does Not Constitute Robbery**

Dixon contends that the State presented insufficient evidence to support the conviction of robbery under the terms of the Delaware statute. He argues that the State failed to present any evidence that he used force to take or retain possession of property.

▮ When reviewing the sufficiency of the evidence, this Court must decide "whether *any* rational trier of fact, viewing the evidence in the light most favorable to

the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt." *Morrisey v. State*, Del. Supr., 620 A.2d 207, 213 (1993). Since the defendant challenges the interpretation by the Superior Court of the robbery statute, 11 *Del.C.* §§ 831, 832, this Court will review the decision *de novo*. *Delaware Alcoholic Beverage Wholesalers, Inc. v. Ayers*, Del.Supr., 504 A.2d 1077, 1081 (1986); *Sandt v. Delaware Solid Waste Auth.*, Del.Supr., 640 A.2d 1030 (1994).

■ Dixon was convicted of First Degree Robbery, 11 *Del.C.* § 832, which applies when a person "commits the crime of robbery in the second degree ..." in combination with certain aggravating factors. The statute proscribing robbery in the second degree provides that:

> A person is guilty of robbery in the second degree when, *in the course of committing theft*, the person uses or threatens the immediate use of force upon another person with intent to:
>
> (1) *Prevent or overcome resistance to the taking of the property or to the retention thereof* immediately after the taking; or
>
> (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

11 *Del.C.* § 831 (emphasis supplied). Dixon used force to escape in his struggle with Messrs. Merritt and Acevedo. Since Dixon was no longer in possession of the property, the force could not have been used in the "course of committing theft" to "overcome resistance to the taking or the retention" of the property.

2. The Commentary also states: "Robbery is thus forcible theft, and is committed whenever physical force is used, or its use is immediately threatened, to overcome resistance to theft or to compel another person to deliver up property or otherwise facilitate theft." DELAWARE CRIMINAL CODE WITH COMMENTARY § 831 at 257–258.

3. The "general rule" provides that ambiguous penal statutes should be strictly construed against the State. *United States v. Granderson*,

■ As this Court has stated with respect to Section 831(1):

> While the phrase "in the course of committing a theft," requires "a causal connection between the use or threat of force and the theft," the code provision does not require that the application of force be contemporaneous with the actual appropriation of the property. It is sufficient under the provision that the force be applied to facilitate the commission of the taking or the retention of the property after it has been appropriated.

*Winborne v. State*, Del.Supr., 455 A.2d 357, 359 (1982) (quoting DELAWARE CRIMINAL CODE WITH COMMENTARY § 831 at 258 (1973)).[2] In order to establish robbery, "[i]t must be shown that [the defendant] used or threatened force *as a means to take the property* of [the victim]." *DeJesus v. State*, 655 A.2d 1180, 1204 (1995) (emphasis in original). It is clear, therefore, that the use of force in an attempt to escape *with the property* of another constitutes robbery. Delaware courts have not confronted the precise question at issue, however. The case *sub judice* raises the issue of whether the use of force in attempting to escape, after abandoning the property and without originally using force to obtain the property, satisfies the statutory definition of robbery. Resolution of this question involves statutory interpretation. When interpreting the *Criminal Code*, we follow the mandate that:

> The general rule[3] that a penal statute is to be strictly construed does not apply to this Criminal Code, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this title.

— U.S. —, —, 114 S.Ct. 1259, 1267, 127 L.Ed.2d 611 (1994) ("[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."); *United States v. O'Brien*, 10th Cir., 686 F.2d 850 (1982) ("ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity and construed strictly against the government"); 3 Singer, SUTHERLAND STATUTORY CONSTRUCTION § 59.03 (5th ed. 1992).

11 *Del.C.* § 203. It is also important to remember that "[n]o conduct constitutes a criminal offense unless it is made a criminal offense by this Criminal Code or by another law." 11 *Del.C.* § 202(a).

The State argues on appeal that the jury could rationally have concluded that Dixon used force in an attempt to escape so that he could "reunite" himself with the property allegedly stolen by his presumed accomplice which was outside the apartment. The State raises this argument for the first time on appeal, and this theory was not argued to the jury. Rather, the State argued at trial that the use of force simply to escape after an attempted theft met the statutory requirements for robbery. In any event, the State argues primarily · that the Second Degree Robbery statute does include pure escape within its ambit. The trial judge denied Dixon's motion for acquittal on this basis.

The trial judge relied on *Winborne*, 455 A.2d 357, for the proposition that force used in flight, without the property, suffices for a robbery conviction. *Winborne* involved, however, the use of force contemporaneously with or prior to the theft of the victim's automobile. This Court in *Winborne* stated: "This contemporaneous use of force to facilitate an escape *and* secure the automobile constitutes Robbery in the First Degree." *Id.* at 360 (emphasis supplied). Thus, *Winborne* clearly rests on the fact that the defendant used force and subsequently took the car as a means of escape. Although he used force in order to escape, the defendant in *Winborne* also used force to overcome the owner's resistance to the taking of her automobile.

The Superior Court also relied on *Morrisey*, 620 A.2d 207, to support its decision to allow the robbery charge to go to the jury.

This Court in *Morrisey* carefully distinguished the facts therein from the case *sub judice*, stating: "The factual basis established by the State to convict Morrisey of . . . [the Robbery] count in the indictment is analogous to a situation where the State's evidence demonstrates that a defendant has taken money from a person by the threat of force and *subsequently* dropped that money at the crime scene." *Id.* at 214 n. 7 (emphasis supplied). In *Morrisey*, the defendant threatened the victim with a gun to take his car keys, and he later dropped the keys. *Id.* at 213. Morrisey used force for the purpose of taking the property. This case is different since the evidence at trial, viewed in the light most favorable to the State, indicated that Dixon did not have any of the victim's property in his possession at the time the force was used. Also, he did not use force originally to take any property.

The Superior Court also relied on *State v. Anderson*, Del.Super., Cr.A. No. 87–11–1107–1110, 1990 WL 177602, Stiftel, J. (Oct. 29, 1990) (Letter Opinion). This case is distinguishable since the defendant used force to exit the store while still in possession of the cigarettes he was attempting to steal. *Id.* at 6. *Stigars v. State*, Del.Supr., 1989 WL 114278, No. 218, 1988, Walsh, J. (August 17, 1989) (ORDER), also does not support the State's position. In *Stigars*, the defendant used force to leave the store "with the stolen goods." *Id.* at 3.

Although a majority of jurisdictions, including Delaware, have found that force used with the intent to escape while in possession of stolen goods constitutes robbery,[4] the majority of courts that have confronted the precise factual scenario at issue here have generally held that robbery is not applicable.[5]

---

4. *See* Annotation, *Use of Force or Intimidation in Retaining Property or in Attempting to Escape, Rather Than in Taking Property, as Element of Robbery*, 93 A.L.R.3d 643 § 4 (1979 & 1995 supp.); *People v. Tinsley*, 176 Mich.App. 119, 439 N.W.2d 313 (1989); *People v. Carroll*, Cal.Supr., 1 Cal.3d 581, 83 Cal.Rptr. 176, 463 P.2d 400 (1970) (where defendant used force to take wallet subsequent abandonment did not relieve him of culpability for robbery); *People v. Cooper*, Cal. Supr., 53 Cal.3d 1158, 282 Cal.Rptr. 450, 811 P.2d 742 (1991); *State v. Meyers*, La.Supr., 620 So.2d 1160 (1993) (use of force to retain posses-

sion and escape); *State v. Handburgh*, 119 Wash.2d 284, 830 P.2d 641 (1992).

5. *See Root v. State*, 247 Ala. 514, 25 So.2d 182 (1946) (holding that use of force merely to escape not robbery); *Roberts v. State*, 49 Okla.Crim. 181, 292 P. 1043 (1930) (same); *Randolph v. State*, Fla.Dist.Ct.App., 503 So.2d 958 (1987) (same); *State v. Baker*, Fla.Dist.Ct.App., 540 So.2d 847 (1989) (same); *Dutton v. State*, 199 Ga.App. 750, 406 S.E.2d 85 (1991) (same); *State v. Young*, Me.Supr., 390 A.2d 1056 (1978) (same); *People v. Nixon*, 156 A.D.2d 144, 548 N.Y.S.2d 194

It is worth emphasizing, however, that virtually all of the cases turn on the interpretation of the jurisdiction's robbery statute.

The Model Penal Code ("MPC"), for instance, explicitly includes within robbery, force used solely to escape from an attempted theft. The MPC includes an act as "in the course of committing a theft" for purposes of the robbery statute if it "occurs in an attempt to commit theft or in flight after the attempt or commission." MODEL PENAL CODE AND COMMENTARY § 222.1 at 96 (1980). The Comments to the model robbery statute note that the MPC approach is broader than many states and cites the Delaware statute as an example of a narrower approach. *Id.* at 105, n. 26.[6]

The State argues that Delaware's use of the phrase "in the course of committing theft" in the second degree robbery statute evidences an intent to include escape, without the property, within the coverage of the statute. The Delaware statute does not specifically define, however, the phrase "in the course of committing theft." The Commentary to the *Delaware Criminal Code* merely requires a "causal connection between the use or threat of force and the theft...." DELAWARE CRIMINAL CODE WITH COMMENTARY § 831 at 258 (1973). The Delaware statute also does not explicitly include escape within its coverage. Dixon had abandoned the property before employing force. The use of force, therefore, had no causal connection with a theft. Under these facts, the conviction for robbery under the Delaware statute was improper.[7]

If the Delaware General Assembly had adopted the MPC formulation, the State would have a convincing argument. The Delaware statute, however, contains a different formulation. It is for the General Assembly, not the courts, to define the elements of a criminal offense. 11 *Del.C.* § 202(a).

## IV. The Superior Court Properly Instructed The Jury on Accomplice Liability

Dixon argues two points on appeal with respect to the accomplice liability instruction for the burglary charge. He argues that (a) the Superior Court should not have given the accomplice liability instruction to the jury since the evidence of the involvement of a second person was speculative and the instruction would confuse the jury; and (b) once the Superior Court decided to give the accomplice liability instruction, it should have also given a specific unanimity instruction with respect to that theory of culpability.

 A defendant is entitled to have the jury instructed with a correct statement of the law. *Claudio v. State*, Del.Supr., 585 A.2d 1278, 1282 (1991). Therefore, this Court "must determine whether the instructions given to the jury were erroneous as a matter of law." *Liu v. State*, Del.Supr., 628 A.2d 1376, 1386 (1993) (citing *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1096 (1991)).

 The jury instructions must be adapted to the factual situation of each trial and conform to the evidence. *Probst v. State*, Del.Supr., 547 A.2d 114, 120 (1988); *Johnson v. State*, Del.Supr., 550 A.2d 903, 907 (1988). Dixon appears to argue that the evidence was not sufficient for the jury to find that he acted as an accomplice to another person and therefore the jury should not have been allowed to consider this basis of culpability. A person is guilty as an accomplice when, "[i]ntending to promote or facilitate the commission of the offense the person ... [a]ids, counsels or agrees or attempts to

---

(1989) (same); *State v. Jackson*, 40 Or.App. 759, 596 P.2d 600 (1979) (same); *State v. Lenzi*, 165 Wash. 116, 4 P.2d 827 (1931) (same); *See contra Morgan v. State*, Tex.Ct.App., 703 S.W.2d 339 (1985) (relying on specific statute to hold that violence accompanying an attempted escape immediately after a completed or attempted theft can constitute robbery); *Chamberlin v. State*, Tex.Ct.App., 704 S.W.2d 801 (1985) (same); *Williams v. Commonwealth*, Ky.Ct.App., 639 S.W.2d 786 (1982) (same); *Becker v. State*, 298 Ark. 438, 768 S.W.2d 527 (1989) (same).

6. The Iowa robbery statute, for example, explicitly includes the use of force in an escape "with or without the stolen property." *Iowa C.Ann.* § 711.1. The Model Penal Code is narrower in another respect since it requires the use or threat of force causing "serious bodily injury." *Model Penal Code* § 221.1. The Delaware statute requires only the use of force.

7. Nevertheless, the burglary conviction stands.

aid the other person in planning or committing it...." 11 *Del.C.* § 271(2)(b).

Although the State did not indict Dixon as an accomplice to the crime charged, during the course of the trial John Wallace testified that he believed the person he saw in the reflection could not have been Dixon. The jury also heard testimony that some of the victims' belongings were recovered in the bushes outside the apartment despite the fact that Dixon was apprehended before he could flee. A defendant can be indicted, as here, as a principal and then convicted as an accomplice. 11 *Del.C.* § 275; *Liu,* 628 A.2d at 1385 n. 2. The jury could properly have concluded that Dixon and another person entered the apartment together with the intent of committing theft and that the other person left with the property before they were discovered.

Dixon argues that once the Superior Court decided to instruct the jury on accomplice liability it should also have given a specific unanimity instruction with respect to that basis of culpability. A specific unanimity instruction is *not* required in every case where a defendant may be convicted as a principal or as an accomplice. *Probst,* 547 A.2d at 122; *Liu,* 628 A.2d at 1386. The jury must find unanimously only "that a principal-accomplice relationship existed between the participants with respect to a particular charge." *Id.* at 123. The jury is not required to find unanimously that the defendant was either an accomplice or a principal, since "the jury is regarded as being unanimous if, without specifically identifying who was the principal and who was the accomplice, they all agree that one of the two actors performed all of the elements of the offense charged as a principal and that both actors knowingly participated in the alleged criminal act." *Id.* This Court has upheld a jury instruction stating that the jury: "need not be unanimous as to a specific theory of liability as a principal or as an accomplice so long as you are in general agreement as to his guilt." *Liu,* 628 A.2d at 1385–86. A specific unanimity instruction is required, however, if "one count encompasses two separate incidents," either of which could support a defendant's conviction for a particular

charge. *Id.* at 1386; *Pope v. State,* 632 A.2d 73, 79 (1993).

The jury was instructed on accomplice liability only with respect to a single incident and the case presented the straight-forward question of whether another person participated with Dixon in a burglary of the apartment. This charge involves two people and one incident. It does not require a specific unanimity instruction.

## V. Conclusion

Since the jury was properly selected and instructed, we **AFFIRM** the burglary conviction. Since Dixon did not employ force, however, to facilitate theft, we **REVERSE** the robbery conviction. This matter is **REMANDED** for proceedings consistent with this Opinion.