STATE of Delaware,

v.

Andre BRIDGERS, Keino Chrichlow.

ID Nos. 0611011332/0611011352
and 0611011396.

Superior Court of Delaware,
New Castle County.

Submitted: June 20, 2007.
Decided: Oct. 19, 2007.

Paul R. Wallace, Esquire, Abigail Layton, Esquire, Department of Justice, Wilmington, DE, for the State of Delaware.

Jerome M. Capone, Esquire, Law Office of Jerome M. Capone, Wilmington, DE, for Defendant, Keino Chrichlow.

Natalie S. Woloshin, Esquire, Woloshin, Lynch, Natalie & Gagne, P.A., Wilmington, DE, for Defendant, Andre Bridgers.

## OPINION

SILVERMAN, J.

Defendants robbed a bank, taking money from several bank employees and threatening several customers at gunpoint. At trial, the court told the jury to consider, among other things, whether Defendants robbed the customers from whom nothing was taken. The jury convicted on all counts. Now, Defendants ask the court to reconsider whether, as a matter of law, threatening a bystander while robbing someone else also makes the bystander a robbery victim. In other words, can it be said that a person who was not the subject of a theft was, nonetheless, robbed?

### I.

At this point, there is no reasonable doubt that Defendants robbed a PNC bank by taking the bank's money from four employees at gunpoint. Defendants also threatened three other bank employees, Johnson, Gleason and Kirk. Defendant Bridgers first approached Johnson, the branch manager, and told him that Defendants were robbing the bank and he forced Johnson into the vault. Gleason was the assistant branch manager. Bridgers forced Gleason to order her tellers to step back and away from their stations to facilitate the robbery.

As the robbery unfolded, Chrichlow confronted nine customers at gunpoint. Defendants did not take anything from them, but Chrichlow held the customers at bay in order to stifle their interfering. During the robbery, Bridgers also noticed Kirk sitting in Kirk's office. He ordered Kirk out and forced him across the bank to where Chrichlow was holding the customers.

Under Delaware's law, each employee from whom Defendants took money and the branch manager are separate robbery victims.[1] In Delaware, and other states, a single bank robbery may spawn many robbery victims, typically the bank's tellers whose cash drawers are "cleaned-out." And, no one disputes that threatening a bystander at gunpoint is a felony, aggravated menacing.[2] (It also is possession of a firearm during the commission of a felony,[3] a crime carrying a minimum, mandatory prison sentence.[4]) But now, for the first time in Delaware, the State contends that any person threatened during a bank robbery is a robbery victim, even if he or she is merely a bystander.

### II.

The bank robbery happened on November 16, 2006. Defendants were indicted on sixteen counts of robbery in the first degree, two counts of possession of a firearm during the commission of a felony, and one count of conspiracy in the second degree. Bridgers was also indicted on one count of possession of a firearm by a person prohibited. As mentioned, the indictment included separate robbery counts for the customers. The getaway driver, Craig Hunter, was indicted too, but he struck a deal,

---

1. *Ross v. State*, Del.Supr., No. 514, 1988, 560 A.2d 491, Moore, J. (Feb. 23, 1989) (ORDER). *See also McCoy v. State*, 361 A.2d 241 (Del. 1976).

2. 11 *Del. C.* § 602(b) (2006).

3. 11 Del. C. § 1447A (2006).

4. 11 Del. C. §§ 4205(b)(2) and (d) (2006).

pleading guilty to several charges and testifying for the State.

Trial was held on May 24, 2007. The court charged the jury on aggravated menacing as a lesser-included offense of the robbery counts involving Gleason, Kirk, and the customers. Defendants conceded that the evidence justified the aggravated menacing instruction. Defendants, however, were found guilty as charged.

Both Defendants filed post-trial motions maintaining they should be acquitted, or, alternatively, be found guilty of aggravated menacing on the convictions for robbing the bystanders (Counts VIII–XVI). Bridgers also seeks acquittal on his convictions for robbing Gleason and Kirk (Counts II and III). For Defendants, their motions are not merely academic, the robbery counts involving Gleason, Kirk and the nine bystanders carry minimum, mandatory prison sentences.

## III.

■ Delaware's robbery statutes do not directly address the issue presented. Robbery in the first degree [5] is robbery in the second degree plus aggravating factors, including display of a deadly weapon. Defendants displayed deadly weapons. Thus, the case turns on robbery in the second degree's definition:

(a) A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person with intent to: (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft. Robbery in the second degree is a class E felony. (b) In addition to its ordinary meaning, the phrase "in the course of committing theft" includes any act which occurs in an attempt to commit theft or in immediate flight after the attempt or commission of the theft.[6]

The statutory phrase, "when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person," invites debate over the connection between the theft and the other person. As discussed next, many cases address how many people can be victims in a single incident. Those cases, however, do not explain what it takes to be a robbery victim.

The Delaware decisions on which the State relies, *Washington v. State,*[7] *State v. Harrigan,*[8] *Elder v. State*[9] and *Dixon v. State*[10] are not helpful. *Washington* concerned whether convictions for multiple robberies of one victim over a short time were multiplicitous, so as to amount to double jeopardy. *Harrigan,* concerned whether evidence supported the finding that defendant threatened immediate use of force to take property from two victims. And, whether the victims' failure to see a

5. 11 Del. C. § 832 (2006).

6. 11 Del. C. § 831 (2006).

7. 836 A.2d 485 (Del.2003) (Court rejected claim that defendant's acts were a single course of conduct; thus, convictions did not violate defendant's constitutional rights.)

8. 447 A.2d 1194 (Del.Super.1982) *aff'd,* 447 A.2d 1191 (Del.1982). (Court denied defendant's motion challenging sufficiency of the

evidence for two of defendant's three robbery convictions. The court found enough evidence for jury to find defendant threatened immediate use of force on two victims, and displayed what appeared to be a deadly weapon.)

9. Del.Supr., No. 430, 1995, 692 A.2d 412, Hartnett, J. (Mar. 8, 1996) (ORDER).

10. 673 A.2d 1220 (Del.1996).

deadly weapon precluded defendant's robbery conviction. In *Harrigan,* four people were present. Harrigan, however, was only charged with three robberies (in addition to other charges). In *Elder,* defendant sought postconviction relief from his guilty plea to charges including robbery. *Elder* only has headnote-value.

In a broad sense, *Dixon's* facts are similar to this case's. Dixon was surprised by the occupants and their guests in an apartment he was burglarizing.[11] When discovered, Dixon tried to flee, empty-handed. In the process, he struggled with two of the guests as they nabbed him. Dixon was convicted not only of first degree burglary, but also first degree robbery.[12] On appeal, Dixon successfully claimed that there was insufficient evidence to support the robbery conviction under Delaware's robbery statute.[13]

*Dixon* holds that because defendant abandoned the property before using force, the force had no causal connection to the theft. Thus, the robbery conviction was unfounded.[14] So, although *Dixon's* *dicta* seemingly assumes the guests were potential robbery victims, *Dixon* actually applies Delaware's robbery statute narrowly, holding that a theft without contemporaneous force is not a robbery. In short, the State's reliance on *Dixon* is misplaced.

**In arguing the Delaware cases, the State highlights the Supreme Court's emphasis on the threat or use of force associated with robbery. In contrast to theft, which is a property crime, robbery "is primarily a crime of physical violence against a person."[15] Nevertheless, the State's argument fails for two reasons. First, the State ignores the mandate that the Delaware *Criminal Code's* provisions "must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in [11 *Del. C.* § 201]."[16] The State is inappropriately stretching the statutory definition and common sense to fit the facts. A stretch is unnecessary especially because the code includes a crime that is directly on point, aggravated menacing. Second, the State's argument disregards the causal connection between the predicate theft and the force or intimidation. The State's expansive reading of the robbery statute notwithstanding, if the putative victim is not the subject of theft nor otherwise involved in that crime, it cannot be said he or she was robbed. The Delaware cases relied upon by the State do not tolerate a disconnect between the theft and the force or intimidation.

The State's strongest authority, *Commonwealth v. Gillard,*[17] comes from Penn-

---

**11.** *Dixon,* 673 A.2d at 1223.

**12.** *Id.*

**13.** *Id.* at 1224.

**14.** *Id.* at 1227.

**15.** *Washington,* 836 A.2d at 490; *see also Drake v. State,* 929 A.2d 768 (Del.2007).

**16.** 11 Del. C. § 203 (2006), *cited and applied in Dixon,* 673 A.2d at 1225. Specifically, 11 *Del. C.* § 201 (2006) states, "[t]he general purposes of this Criminal Code are: (1) To proscribe conduct which unjustifiably and inexcusably causes or threatens harm to individual or public interests; (2) To give warning of the nature of the conduct proscribed and of the sentences authorized upon conviction; (3)constitute each offense; (4) To differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor; and (5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection."

**17.** 850 A.2d 1273 (Pa.Super.2004).

sylvania's Superior Court. *Gillard* is reasonably analogous and it supports the State's position. *Gillard,* however, has never been cited by any court, much less followed. The holdings in cases from Kansas, Virginia, New Jersey and Ohio supporting Defendants' arguments are more compelling.

On its facts, *State v. Shoemake,*[18] is a solid precedent. Shoemake robbed a supermarket at gunpoint, taking money from the manager and a cashier. He also made another employee hold a bag, into which Shoemake put the stolen money. The Kansas Supreme Court held that defendant robbed the manager and cashier separately, but not the employee who only held the bag and from whom nothing was taken. Although Kansas's robbery statute[19] is not identical to Delaware's, it invites the same argument the State is making here. Thus, *State v. Shoemake* is helpful.

In *Sullivan v. Commonwealth,*[20] defendant robbed a video store at gunpoint, taking money from one employee and forcing another into a bathroom. The Virginia intermediate appellate court held that (as in Delaware) one robbery can yield multiple robbery victims. But, *Sullivan* further held that the number of robberies "is determined by the number of persons from whose possession property is taken separately by force or intimidation."[21] Therefore, the employee who was forced into the bathroom was not robbed.

In *State v. Carlos,*[22] defendant robbed a gas station. At the gas station were four people: the owner, an employee, the owner's wife, and a customer. Carlos took money from the owner and the employee, but nothing from the owner's wife or the customer.[23] Defendant was convicted of four robberies, and other crimes. Vacating two of the robberies, the New Jersey intermediate appellate court held that Carlos "could not have been properly found guilty of robbery of each person subjected to force or intimidation unless a theft or attempted theft from that person was proved."[24]

In a later case, *State v. Mirault,*[25] New Jersey's Supreme Court scaled-back *Carlos's* broad holding. In *Mirault,* a police officer grappled with a burglar who was fleeing with stolen property. Mirault's robbery conviction was affirmed, even though he took nothing from the police officer. *Mirault* held that police are included in the class of people New Jersey's robbery statute protects. Although it expressly mentions and limits *Carlos* in a footnote, *Mirault* does not overturn *Carlos.*[26] When *Carlos* and *Mirault* are read together, threatening a mere bystander during a theft from another in New Jersey does not amount to robbery of the bystander.

In *State v. Rojas,*[27] defendant robbed a man in a restroom. When the restroom attendant appeared, defendant ordered

---

**18.** 228 Kan. 572, 618 P.2d 1201 (1980).

**19.** Kan. Stat. Ann. § 21–3426 (2006). The Kansas statute provides: Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person.

**20.** 14 Va.App. 1044, 420 S.E.2d 724 (1992).

**21.** *Id.* at 726 (citations omitted).

**22.** 187 N.J.Super. 406, 455 A.2d 89 (App.Div. 1982) *cert. denied,* 93 N.J. 297, 460 A.2d 693 (1983).

**23.** *Id.* at 91–92.

**24.** *Id.* at 94.

**25.** 92 N.J. 492, 457 A.2d 455 (1983).

**26.** *Id.* at 458.

**27.** 2003 WL 22228511 (Ohio Ct.App.2003).

him at gunpoint to leave. An Ohio appeals court vacated defendant's robbery conviction involving the attendant, stating that Ohio's robbery statute did not consider "someone against whom the weapon is brandished as a victim separate and apart from the victim of the theft offense." [28]

 Taking the cases from Delaware and elsewhere into account, the court assumes that anyone from whom property is taken by threat or force and anyone actively involved during a theft-in-progress, such as an arresting officer or a pursuing homeowner, may be a robbery victim. The court holds, however, that someone who is merely a threatened bystander has not been robbed. A threatened bystander is a victim of the violent,[29] class E felony specifically meant to apply to armed threats—aggravated menacing—not a victim of robbery. This holding gives proper deference to the *Criminal Code's* sections 203 and 201 and the weight of authority, presented above.

Therefore, the robbery convictions as to the customers cannot stand. They were threatened, but otherwise they simply watched Defendants rob the bank. Because, the customers were undoubtedly victims of the lesser-included offense, aggravated menacing, the robbery convictions for the customers must be reduced. This leads to Bridgers's motion concerning Gleason and Kirk, the bank employees who did not surrender anything to Defendants. Bridgers's motion brings this case's holding into sharper relief.

### IV.

 Bridgers forced Gleason to participate actively in the theft when he forced her to order the tellers out of his way. Accordingly, the evidence supports the conclusion that Gleason was far more than a bystander. As for Kirk, Bridgers forced him out of his office and frog-marched him across the lobby so that Chrichlow could hold him at gunpoint with the customers. Although neither employee gave anything to Defendants, Gleason actively participated in the theft, and they both had a custodial interest in the bank's money. They had to watch and do nothing as Defendants took their employer's money, intimidated their co-workers and frightened the bank's customers. Thus, the character of the threats toward them was different, as was, perhaps, the way they perceived those threats. In theory, a jury could find that neutralizing employees during a bank robbery by threatening them is causally related to the theft.

The problem with the robbery convictions for the counts involving Gleason and Kirk, especially Kirk, is that the parties and the court did not focus on the factual and legal nuances concerning them. Accordingly, as to them, the evidence, argument and jury instructions were superficial. Regarding the bank's employees, the charge was:

> As to Counts 1, 2, 3, 4, 5, 6, and 7, which name PNC employees as victims, Delaware law defines Robbery in the First Degree as follows.... 3. It must have been Defendant's intent to prevent or overcome each victim's resistance to Defendant's taking money belonging to PNC Bank *or* it must have been Defendant's intent to compel each victim to give up the money....[30]

For the customers, the charge was:

> As to Counts 8, 9, 10, 11, 12, 13, 14, 15, and 16, which name non-bank employees as victims, Delaware law defines Robbery in the First Degree, in pertinent part.... 1. Defendant's conduct oc-

---

**28.** *Id.* at *3.

**29.** 11 *Del. C.* § 4201(c).

**30.** Trial Jury Instructions, 7–8.

curred in the course of committing Theft. While the phrase "in the course of committing theft" requires a causal connection between the threat of force and the theft, it does not require that the threat be contemporaneous with the actual taking of the property.

AND

2. Defendant must have used force or threatened the immediate use of force upon another person, in the case, [the named victims in Counts 8–16];

AND

3. It must have been Defendant's intent to prevent or overcome each victim's resistance to Defendant's taking money belonging to PNC Bank.... [31]

As to the customers, the instructions' superficiality is harmless because court is reducing those convictions to aggravating menacing, as a matter of law. And, of course, the convictions for robbing the employees, other than Gleason and Kirk, are sound. But, it is reasonably possible that had the jury been instructed more precisely as to Gleason and Kirk, it would have found Defendants guilty of aggravated menacing, not robbery. Therefore, Defendants are entitled to a new trial on those charges.

█ The jury should be told that to be a robbery victim, a person must have property taken from him or her, including property the person controls. Otherwise, the victim must become involved or Defendant must force the victim to become involved in the theft, and be threatened by Defendant in the process. A person who only is forced to watch a theft or a robbery from another person and who is not otherwise involved is not a robbery victim.

Now, the State must decide how to proceed. It may ask for a new trial on the robbery charges involving Gleason and Kirk. Or, the State may stipulate to this order's entry and preserve the State's rights. In that event, the court will also reduce the robbery convictions involving Gleason and Kirk, and proceed to sentencing.

**V.**

For the foregoing reasons, Defendants' Motions for Judgment of Acquittal are **GRANTED** in part. As to Defendants Bridgers and Chrichlow, the Prothonotary shall enter judgments of not guilty of robbery first degree in Counts VIII–XVI, and verdicts of guilty of the lesser-included aggravated menacing in Counts VIII–XVI.

Within ten days of this order's date, the State shall announce its intentions. If the State does not respond, this order shall become final immediately when the deadline passes. Then, the court will schedule the retrial on the robbery counts naming Gleason and Kirk as victims.

**IT IS SO ORDERED.**