**Tyrone GUY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 500, 2008.**

Supreme Court of Delaware.

Submitted: June 16, 2010.
Decided: Aug. 3, 2010.

---

3. *Adams v. Delaware Harness Racing Comm'n,* 2010 WL 201208 at *5 (Del.Super.).

Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr. I.D. No. 0107017041.

Christopher D. Tease, Esquire, Wilmington, Delaware; for Appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, Delaware; for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice:

Tyrone Guy ("Guy"), the defendant below, appeals from the Superior Court's denial of his Rule 61 motion for post-conviction relief. Guy was convicted of First Degree Murder, First Degree Felony Murder, Possession of a Firearm During the Commission of a Felony, Attempted First Degree Robbery, and Conspiracy. On appeal, Guy raises three claims of error. First, Guy contends that he was entitled to an evidentiary hearing, because the trial judge failed to conduct a complete *Batson*[1] analysis of the State's peremptory challenges of several African–American members of the juror panel. Second, Guy argues that his trial counsel were ineffective for allowing four witnesses' out-of-court statements to be introduced into evidence. Third, Guy claims that under this Court's recent opinion in *Allen v. State*,[2] the trial court erred by failing to instruct the jury that to convict him of First Degree Murder, the jury must determine (1) Guy's mental state with regard to the murder charges, and (2) that the killing of the victim was foreseeable. Because Guy's claims are procedurally barred and lack substantive merit, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 18, 2001, Guy and his accomplice, Akbar Hassan–El, shot Abdullah Alameri while attempting to rob a Jack and Jill ice cream truck that Alameri was operating.[3] After a mistrial, the State elected to try Guy and Hassan–El separately.[4] Guy was retried on charges of First Degree Murder, First Degree Felony Murder, Possession of a Firearm During the Commission of a Felony, and Attempted First Degree Robbery and Conspiracy. The retrial commenced on June 3, 2004,[5] and a jury found Guy guilty of all charged offenses.[6] The Superior Court sentenced Guy to life imprisonment on the First Degree Murder and Felony Murder convictions, and to

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding that the prosecution may not challenge potential jurors solely on account of their race).

2. *Allen v. State*, 970 A.2d 203 (Del.2009) (holding that under 11 *Del. C.* § 274, where a charged offense is divided into degrees, the defendant is entitled to an instruction requiring the jury to make an individualized determination of the defendant's accountability for an aggravating fact or circumstance).

3. A more detailed statement of the facts is set forth in this Court's Opinion on direct appeal, affirming Guy's convictions. *Guy v. State*, 913 A.2d 558, 561–62 (Del.2006).

4. *Id.* at 562.

5. *Id.*

6. *Id.*

20 years at Level V for the remaining convictions.[7] This Court affirmed Guy's convictions on direct appeal.[8]

On January 2, 2008, Guy moved for post-conviction relief, raising, *inter alia*, the *Batson* and ineffective assistance of counsel claims.[9] The Superior Court denied the motion,[10] and Guy's court-appointed counsel appealed to this Court ("the first appeal"). While that appeal was pending, on July 20, 2009, Guy filed, *pro se*, a second motion for post-conviction relief based on this Court's recent opinion in *Allen v. State*. The Superior Court denied that motion, because Guy's appeal from the denial of his first post-conviction motion was pending in this Court. Guy filed a *pro se* appeal from that decision ("the second appeal").

On September 10, 2009, the Clerk issued a notice directing Guy to show cause why his second appeal should not be dismissed as untimely filed. This Court found Guy's response to be inadequate. It granted the State's motion to remand the first appeal, to permit Guy to file a second (consolidated) motion for post-conviction relief incorporating Guy's *Allen*-based claim.[11] Guy filed that motion with the assistance of counsel on October 20, 2009. The Superior Court denied the motion, and this appeal followed.

## CLAIMS FOR POST–CONVICTION RELIEF AND ANALYSIS

■ On appeal, Guy repeats his three claims for post-conviction relief, all of

which the Superior Court denied. We review the Superior Court's denial of a motion for post-conviction relief for abuse of discretion. Questions of law, however, are reviewed *de novo*.[12]

### I. Batson Claim

■ During jury selection, the State was allotted 12 peremptory challenges. Of the 10 peremptory challenges actually used by the State, 5 were of African–American members of the jury pool. One of the State's 2 peremptory challenges of alternate jurors was used to excuse an African–American. After the State's sixth peremptory challenge (*i.e.*, after the State had challenged five African–Americans, and one Caucasian), defense counsel objected on *Batson* grounds, claiming that the State was using its peremptory challenges in a racially discriminatory manner. The State responded as follows:

> Your Honor, we currently have eight jurors in the panel, two of whom are black female jurors. I think four or five—if I can look—of those people I challenged had a criminal history. And [the sixth challenged individual, who was the fifth challenged African–American] is the first individual, that I can recall, that I challenged who did not have a criminal history.

> Our collective concern here was that, number one, she had never considered what her position was on the death penalty. . . . Also, there was a question of lifestyle for her. She has three children. She is not married. She apparently is

7. *Id.*

8. *Id.* Rehearing was denied on December 12, 2006.

9. Guy initially filed a *pro se* motion for post-conviction relief on March 14, 2007. The Superior Court granted Guy's request and appointed counsel shortly thereafter. Guy's motion for post-conviction relief was filed with assistance of counsel on January 2, 2008.

10. *State v. Guy*, 2008 WL 4152735 (Del.Super.Ct. Aug. 29, 2008).

11. *Guy v. State*, 979 A.2d 1110 (Table), 2009 WL 3087248 (Del. Sep. 28, 2009).

12. *Claudio v. State*, 958 A.2d 846, 850 (Del. 2008).

living with an individual in the apartment off Naamans Road, and under the circumstances we thought it was appropriate not to impanel her.

Defense counsel did not respond to the State's explanation, and the Superior Court denied the objection, ruling that: I will allow the State to exercise this challenge based upon the record they created. Caution, however, should be given as far as future challenges, because, I will note, of the six challenges that have been made by the State, there have been—and although, perhaps, justified—three of them have been black females, two of them have been black males and only one has been a Caucasian.

In response, the State repeated its argument that all five of its challenges were based on the potential jurors' criminal history. Defense counsel did not challenge the validity of that argument.

In his first motion for post-conviction relief, Guy claimed that the Superior Court erred by denying defense counsels' *Batson* objection without conducting the complete analysis that *Batson* requires. In *Jones v. State*,[13] we described the required analysis of a *Batson* claim:

> The *Batson* court mandated a tripartite analysis of a claim that the prosecution used peremptory challenges in a racially discriminatory manner.... [T]he three analytical steps are as follows: First, the defendant must make a *prima facie* showing that the prosecutor has exer-

cised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.[14]

Guy claims that the trial court performed only the first two analytical steps, but then failed to "assess[ ] the persuasiveness of the [State's] facially race-neutral justification by considering the totality of relevant facts."[15] Where the trial court fails to perform the third step of the *Batson* analysis, Guy urges, the case must be remanded for an evidentiary hearing and a complete *Batson* inquiry.[16]

The Superior Court denied Guy's first motion for post-conviction relief, holding that Guy's *Batson* claim was procedurally barred under Superior Court Criminal Rules 61(i)(3) and (4). Rule 61(i)(3) bars a motion for post-conviction relief with respect to "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction ... unless the movant shows (A) Cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights,"[17] or shows "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[18] Rule 61(i)(4)

---

**13.** *Jones v. State,* 938 A.2d 626, 631 (Del. 2007).

**14.** *Id.* citing *Robertson v. State,* 630 A.2d 1084, 1089 (Del.1993).

**15.** *Dixon v. State,* 673 A.2d 1220, 1224 (Del. 1996) (citation omitted).

**16.** *Jones,* 938 A.2d at 633 ("The record does not show that the trial judge performed this

third step of the analysis. Instead, the trial judge simply noted in response to each *Batson* challenge that the State gave a race-neutral response. We therefore conclude that this case must be remanded for a complete *Batson* analysis.").

**17.** Superior Court Criminal Rule 61(i)(3).

**18.** Superior Court Criminal Rule 61(i)(5).

bars the assertion of "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction [or] in an appeal ... unless reconsideration of the claim is warranted in the interest of justice." [19] Because Guy's *Batson* claim was raised at trial but not on his direct appeal, the trial court held that claim barred by both Rules 61(i)(3) and 61(i)(4).

On appeal, Guy merely restates the *Batson* claim as presented to the Superior Court. He makes no effort to show why or how the Superior Court abused its discretion in holding that that claim was procedurally barred. Guy does not explain why his *Batson* claim should be reconsidered under the "interest of justice" exception, nor does he demonstrate a "colorable claim that there was a miscarriage of justice." To invoke the "interest of justice" exception of Rule 61(i)(4), a movant must show that (1) subsequent legal developments have revealed that the trial court lacked the authority to convict or punish him,[20] (2) the previous ruling was clearly erroneous, or (3) there has been an important change in the factual basis for issues previously posed.[21] No such showing is made here.

To the extent Guy's *Batson* claim rests on the "miscarriage of justice" exception of Rule 61(i)(5)—*i.e.*, as a claim addressing a "constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings" [22]—the claim lacks merit. In *Batson* itself, the United States Supreme Court held that a prosecutor may exercise peremptory challenges for any reason at all, "as long as that reason is related to his view concerning the outcome of the case to be tried" and not based "solely on account of the juror's race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." [23]

■ Where a defendant makes a *prima facie* showing of discrimination in the prosecution's exercise of peremptory challenges, the prosecutor must rebut that showing by providing a "clear and reasonably specific explanation of legitimate reasons for his use of the challenges." [24] Here, after defense counsel objected to the State's challenges, the prosecution explained that it struck four of the first five panelists (one of whom was Caucasian) because they had a criminal history; and struck the sixth panelist because of her lifestyle and lack of firm opinion on the appropriateness of imposing the death penalty. The prosecutor also pointed out that the selected panel included two African–American jurors. At that stage, the State's explanation was sufficient, because "the reasons for the strike need not rise to the level of a strike for cause," but only be race neutral.[25] As a consequence, *the burden shifted back* to the defense to prove purposeful discrimination.[26] Here, however, Guy's counsel remained silent and made no effort to persuade the trial judge that "the totality of relevant facts" established that the prosecutor's explanations were a pretext for racial discrimination.[27]

**19.** Superior Court Criminal Rule 61(i)(4).

**20.** *Flamer v. State,* 585 A.2d 736, 746 (Del. 1990).

**21.** *Weedon v. State,* 750 A.2d 521, 527 (Del. 2000).

**22.** Superior Court Criminal Rule 61(i)(5).

**23.** *Batson, supra,* 476 U.S. at 89, 106 S.Ct. 1712 (citations omitted).

**24.** *Dixon,* 673 A.2d at 1224 (citations omitted).

**25.** *Jones,* 938 A.2d at 632.

**26.** *Id.*

**27.** *Id.* Only now does Guy contend that the reasons for exercising the challenges were insufficient and should have caused the trial judge to suspect that the prosecution's intent

The third and final step of the *Batson* analysis required the trial judge to "address and evaluate all the evidence introduced by each side (including all evidence introduced in the first and second steps) that tends to show that race was or was not the real reason [for the peremptory challenges] and determine[ ] whether the defendant has met his burden of persuasion." [28] The judge did precisely that. Although the trial judge did not explicitly state on the record that he was "engaging in the third *Batson* analytical step," that he did so is evident from his ruling. The court's ruling referred both to the record created by the State and to the initial inference of discrimination created by defense counsels' objection. It also demonstrated that the trial judge had "address[ed] and evaluate[d] all the evidence introduced by each side." [29] Additionally, the trial judge's implicit "warning" that future strikes of African–American panelists might not be upheld, "signaled" to the parties that even though Guy had failed to meet his burden to show purposeful discrimination, future strikes could "weaken the assessment of the prosecution's [then

sufficient] explanations as to the [first six] challenges." [30]

In short, the Superior Court did not err by denying Guy's first claim for post-conviction relief. That claim is procedurally barred, and also fails on the merits.

## II. *Ineffective Assistance of Counsel Claim*

■ We next turn to Guy's claim of ineffective assistance. At trial, the State introduced into evidence three taped out-of-court statements, and the defense introduced one taped out-of-court statement, of four witnesses who testified at the trial. [31] Before the testimony of the State's first witness (Corporal Mitchell Rentz), the State and defense counsel agreed that Corporal Rentz would be permitted to testify about the contents of statements made to the police by those four witnesses, and that those out-of-court statements would be presented through Rentz's testimony. That agreement deviated from the standard procedure for introducing out-of-court statements into evidence under 11 *Del. C.* § 3507, which requires "the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself." [32] The jury was

was discriminatory. For example, Guy points out that only two of the four persons who were excused on the ground of having a criminal history had Title 11 convictions (rather than convictions for motor vehicle violations). Even if relevant to prove discriminatory intent, that could have been brought to the attention of the trial court by defense counsel. It does not establish that the trial court did not properly perform a *Batson* analysis. Because a trial court's findings on the issue of discriminatory intent *(i.e.,* after performing the third *Batson* analytical step) "largely turn on evaluation of [the prosecutor's] credibility," this Court applies a deferential standard of review to those findings, which will stand unless they are clearly erroneous. *Robertson v. State,* 630 A.2d at 1090–91; *Jones v. State,* 940 A.2d 1, 9 (Del.2007). Here, there is no clear error.

**28.** *Jones,* 938 A.2d at 633 (citing *Riley v. Taylor,* 277 F.3d 261, 286 (3d Cir.2001)).

**29.** *Compare Jones, supra,* at 633 (holding that the record did not show that the trial judge performed the third *Batson* step because the judge "simply noted in response to each *Batson* challenge that the State gave a race-neutral response.").

**30.** *Id.* at 633 (citing *Riley,* 277 F.3d at 283).

**31.** The statements were admitted into evidence under 11 *Del. C.* § 3507, which provides that "[i]n a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."

**32.** *Keys v. State,* 337 A.2d 18, 20 n. 1 (Del. 1975).

also allowed to review the taped statements while deliberating.

Guy claims that his counsel were ineffective in agreeing to the procedure described above, because "it resulted in damaging cumulative evidence being introduced at trial." The Superior Court rejected that claim, based on trial counsels' affidavit stating that "they agreed to the introduction of evidence in this manner because it was the most effective way to present it to the jury."[33] The Superior Court concluded that defense counsels' agreement with the State was a tactical decision that "provided them an opportunity from the very beginning of the trial to emphasize to the jury the credibility issue of each witness which was a critical part of the defense."[34] That conclusion, Guy claims, is erroneous because it failed to address "the issue of the very admissibility of the cumulative evidence through the taped statements . . . allowing [Corporal Rentz] to read the statements, and allowing the statements to be available during deliberations." Consequently, Guy concludes, defense counsels' failure to object to the introduction of the out-of-court statements was objectively unreasonable under *Strickland v. Washington*.[35]

■ This Court reviews a trial court's denial of a motion for post-conviction relief based on claims that counsel was ineffective, for abuse of discretion.[36] To prevail on a claim of ineffective assistance of counsel the defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance caused the defendant actual prejudice,[37] *i.e.,* "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the trial (or appeal) would have been different."[38]

Guy's claim fails on the first *Strickland* prong, because it was not objectively unreasonable for defense counsel to agree to the introduction of the out-of-court statements.[39] Delaware Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by . . . needless presentation of cumulative evidence."[40] But, the four out-of-court statements were not cumulative evidence. Cumulative evidence is "[a]dditional or corroborative evidence to the same point. That which goes to prove what has already been established by other evidence."[41] Here, defense counsel used the out-of-court statements for purposes different from the witnesses' actual testimony at trial. Although the State used the statements to prove the charges against Guy, defense counsel used the statements to undermine the credibility of the witnesses who gave those statements. The Superior Court held that defense counsels' purpose "was a critical part of the defense."[42] Therefore, counsels' representa-

33. *State v. Guy*, 2008 WL 4152735, at *4.

34. *Id.*

35. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

36. *Capano v. State*, 889 A.2d 968, 974 (Del. 2006); *Outten v. State*, 720 A.2d 547, 551 (Del.1998).

37. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

38. *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

39. A court deciding an ineffective assistance claim is not required to address both components of the inquiry if the defendant's showing on one component is insufficient. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

40. D.R.E. 403.

41. BLACK's LAW DICTIONARY 380 (6th ed. 1990).

42. *State v. Guy*, 2008 WL 4152735, at *4.

tion did not fall below an objective standard of reasonableness. We agree. Guy offers no evidence that overcomes the strong presumption that counsels' actions should be considered sound trial strategy.[43] Therefore, Guy's second claim of error also fails.

### III. Jury Instructions on First Degree Murder and Felony Murder

■ Guy bases his final claim of error on this Court's recent opinion in *Allen v. State*, as applied to the instructions given to the jury at Guy's trial on the First Degree Murder and Felony Murder charges. In *Allen*, we held that where a defendant is charged with accomplice liability for an offense that is divided into degrees, the defendant is entitled to an instruction, under 11 *Del. C.* § 274, that the jury must determine the defendant's accountability for any aggravating factor or circumstance.[44] *Allen* reconciled this Court's previous inconsistent decisions:

> Although section 274 includes language relating to both culpable mental states and *aggravating circumstances*, in the past several of our panel decisions have only focused on the mental state of the alleged accomplice to a robbery and not on the accomplice's "accountability for an aggravating fact or circumstance." Consequently, we have previously held that section 274 only applies when the underlying offenses can be divided into

degrees with different mental states for each degree. Therefore, we have concluded that a lesser-included offense instruction would be appropriate if the jury is required to distinguish between degrees of homicide, but not robbery.[45]

That is, *Allen* addressed our earlier decisions that did not apply Section 274 to focus on an accomplice's "accountability for an aggravating fact or circumstance." Our earlier decisions which held that a Section 274 instruction was appropriate when the underlying offense could be divided into degrees with different mental states for each degree (*e.g.*, homicide), remained unaffected by Allen.[46]

The instruction given the jury at Guy's trial complied with our earlier decisions that properly applied Section 274 to accomplice liability for homicide. With respect to the First Degree Murder charge, the jury was instructed as follows:

> Under the laws of this State, criminal liability for Homicide is divided into "degrees." As I have indicated to you, they are Murder First Degree, Murder Second Degree, Manslaughter, and Criminally Negligent Homicide. Each of these offenses has a different mental state required for that conduct.... If you unanimously find beyond a reasonable doubt that there was a principal-accomplice relationship between Tyrone Guy and Akbar Hassan–El with respect

---

**43.** *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 ("Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal citation omitted).

**44.** *Allen*, 970 A.2d at 214. 11 *Del. C.* § 274 provides that "when, pursuant to 11 *Del. C.* § 271 [providing for accomplice liability], 2

or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.").

**45.** *Allen*, 970 A.2d at 211 (emphasis in original).

**46.** *Id.*; *Richardson v. State*, 3 A.3d 233 (Del. 2010) (holding that *Allen* was not a new rule and did not apply retroactively).

to the killing of Abdul[lah] Alameri, you must also unanimously decide what degree of homicide is compatible with Mr. Guy's own culpable mental state. In other words, even though you may find that Mr. Guy and Mr. Hassan–El were accomplices in the criminal acts that resulted in the death of Abdul Alameri, each accomplice, is not necessarily guilty of homicide in the same degree.

Guy now claims that one element of First Degree Murder—the causation requirement—is "an aggravating fact or circumstance." Therefore, the Superior Court should have instructed the jury to make an individualized determination of Guy's accountability for causing the death of Alameri. The Superior Court rejected that claim, explaining that "this was not the intent of the *Allen* decision." We agree. Guy reads *Allen* out of context. *Allen* extended the applicability of Section 274 to offenses divided into different degrees, based on factors other than the defendant's mental state (*e.g.*, whether a deadly weapon was used or physical injury was caused). *Allen* did not alter the well established principle that the different degrees of homicide offenses are distinguished by the defendant's mental state.[47] The individualized finding of a defendant's particular mental state ensures that a defendant is convicted of the crime appropriately related to his specific conduct. As the Superior Court noted, to accept Guy's claim would put the legal concept of accomplice liability into chaos and would be an incorrect interpretation of the *Allen* decision. Therefore, that claim is rejected.

Guy also argues that the First Degree Murder jury instruction confused the jury and requires a new trial. His argument runs as follows: the jury instruction given with respect to Felony Murder required the jury to find that the murder was a foreseeable consequence of the robbery of the victim. The First Degree Murder jury instruction did not mention foreseeability. Both instructions addressed the law of accomplice liability. Guy contends that giving the jury one accomplice liability instruction for Murder First Degree, that made no reference to foreseeability, and a second accomplice liability instruction for Felony Murder, confused the jury.[48] The Superior Court held that Guy's "foreseeability argument" was beyond the scope of claims discussed in *Allen*, and declined to address that argument because it was inconsistent with this Court's order of remand. We need not decide the issue, because in any event, Guy fails to show how the different instructions would either have confused the jury or were erroneous as a matter of law. That claim, too, fails on its merits.

## CONCLUSION

For the above reasons, the judgments of the Superior Court are affirmed.

---

47. *Richardson*, 3 A.3d at 237.

48. In an attempt to avoid the procedural bars of Superior Court Rule 61(i), Guy half-heartedly argues that his trial counsels' failures to object to that alleged inconsistency in the instructions, and to require an *"Allen* instruc-
tion" on the causation element of First Degree Murder, constituted ineffective assistance of counsel. We need not address the effectiveness of trial counsels' representation regarding jury instructions, because Guy's claims are substantively without merit.